[No. B232731. Second Dist., Div. Four. Mar. 12, 2012.]

KATHERINE LEE BATES, as Special Administrator, etc., Plaintiff and Appellant, v.
PRESBYTERIAN INTERCOMMUNITY HOSPITAL, INC., Defendant and Respondent.

**COUNSEL**

Balisok & Associates and Russell S. Balisok for Plaintiff and Appellant.

Fonda & Fraser, Kristen J. Heim and Michael O'Flaherty for Defendant and Respondent.

**OPINION**

**MANELLA, J.**—Appellant Katherine Lee Bates contends the trial court erred in awarding costs to a defendant sued under the Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code, § 15600 et seq.; the Elder Protection Act) and abused its discretion in concluding that an offer to settle pursuant to Code of Civil Procedure section 998 by that defendant—respondent Presbyterian Intercommunity Hospital, Inc.—was reasonable and made in good faith.[1] She further contends that neither fees paid to an undesignated expert nor expert witness costs incurred prior to the section 998 offer were recoverable. For the reasons discussed, we disagree. Accordingly, we affirm the trial court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Complaint*

In December 2007, appellant, acting as the administrator of the estate of Rinda Lou Bates, brought suit against respondent and several others for injuries suffered by Rinda prior to her death.[2] Appellant alleged that on October 1, 2006, after suffering a broken hip, Rinda was admitted to Presbyterian Intercommunity Hospital, a hospital owned and operated by

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

[2] Because she shares a surname with appellant, Rinda Lou Bates will be referred to as "Rinda" to avoid confusion. Factual allegations are taken from the original complaint and the operative fifth amended complaint, filed in May 2010. The original complaint asserted claims for negligence, willful misconduct, and wrongful death; the amended complaint included a separate claim for elder abuse.

respondent, where she underwent surgery and physical therapy.[3] On October 20, she was transferred to a skilled nursing facility owned by codefendants Ensign Whittier West, LLC, and the Ensign Group, Inc. (collectively, Ensign). On November 3, Rinda was discharged and returned home where her care was overseen by nurses employed by a home health nursing agency, Arcadia Home Health (Arcadia). According to the complaint, Arcadia was "a business activity" of respondent. During this period, Rinda's physician was codefendant William Stimmler, who was employed by codefendant Bright Medical Associates, Inc. (Bright Medical).

Shortly after Rinda was sent home at the beginning of November, she was found to have a serious pressure sore over her coccyx. The home nurses notified Dr. Stimmler, who attempted to obtain authorization to readmit Rinda to PIH through Bright Medical's utilization review department. The authorization was not secured until November 15. By that time the sore had grown and become infected. After Rinda's readmission to PIH on November 15, efforts were made to treat the condition by medical personnel, but proved futile. Rinda was returned home and died of sepsis in December.

In her complaint, appellant contended that under the appropriate duty of care standard, once the home nurses assessed the severity of the pressure sore in early November, they should have obtained immediate hospitalization for Rinda by calling 911 or another emergency service, rather than waiting for Dr. Stimmler to obtain authorization. Appellant asserted that respondent was responsible for the actions of the nurses supplied by Arcadia as respondent was "the licensee and operator of [Arcadia]"; respondent "owed a duty to [Rinda] to contract only with those health care providers after engaging in a reasonable due diligence effort to ensure that such were able to . . . provide care which met minimum legal standards for such care"; and respondent was obligated "to use due care in selecting providers of skilled nursing services." Appellant's complaint also contended that respondent failed to provide sufficient nursing staff to care for Rinda before and after the original surgery, which caused her to develop a pressure sore at the site, failed to recommend insertion of a feeding tube when Rinda was originally hospitalized, and failed to insert a feeding tube in a timely fashion when requested by the family.

B. *Respondent's Offer to Compromise and Subsequent Dismissal*

On February 9, 2010, respondent served an offer to compromise under section 998. Respondent offered to waive costs and to refrain from pursuing a claim for malicious prosecution if appellant agreed to dismiss her claims

---

[3] References to "respondent" are to Presbyterian Intercommunity Hospital, Inc. The hospital it operates will be referred to as "PIH."

against respondent with prejudice. Appellant did not accept the offer and it expired. However, on February 23, 2011, during jury selection, appellant voluntarily dismissed her claims against respondent with prejudice without having settled with respondent.

### C. *Cost Bill and Motion to Tax*

In March 2011, respondent submitted a memorandum of costs, seeking $83,713.43 in costs, including $64,826.75 in expert witness fees.[4] The request for expert witness fees was based on the section 998 offer to compromise.[5]

Appellant moved to strike the cost bill and/or tax costs, contending primarily that (1) a provision of the Elder Protection Act, specifically Welfare and Institutions Code section 15657, precludes recovery of costs by a successful defendant where the claims of the plaintiff bear any relation to elder abuse and (2) respondent's February 2010 section 998 offer was unreasonable and/or not made in good faith. Appellant also requested several adjustments in the cost bill, including deletion of fees paid to experts prior to the February 2010 date of respondent's section 998 offer and exclusion of fees paid to an expert who was not designated as a witness.

To support the contention the offer was unreasonable or made in bad faith, appellant presented evidence that within days of Rinda's return home in November, nurses working for the Arcadia nursing agency observed the worsening of the pressure sore and sought authorization from Dr. Stimmler to transfer Rinda to PIH's wound care clinic for evaluation, but did not seek emergency hospitalization. The authorization was not received for approximately 10 days. During this period, the pressure sore grew larger and became infected.[6] Appellant also presented a declaration from trial counsel who stated

---

[4] The cost bill included $17,816.68 for deposition costs and $920 for filing and motion fees. Respondent subsequently deleted $4,773.70 and $720 respectively from those categories, and withdrew mileage costs of $53.75, reducing the request to $78,165.98.

[5] Fees of experts not ordered by the court are not ordinarily recoverable as costs. (§ 1033.5, subd. (b)(1).) Section 998, subdivision (a) provides that the costs allowed under section 1032 "shall be withheld or augmented as provided in this section." Section 998, subdivision (c)(1) provides that if an offer made under section 998 by a defendant is not accepted "and the plaintiff fails to obtain a more favorable judgment or award," the plaintiff "shall not recover his or her postoffer costs and shall pay the defendant's costs from the time of the offer." The subdivision goes on to state: "In addition, in any action or proceeding other than an eminent domain action, the court or arbitrator, in its discretion, may require the plaintiff to pay a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the defendant."

[6] In a deposition excerpt attached in support of the motion to tax costs, appellant's expert, Loren G. Lipson, M.D., expressed the opinion that respondent's liability was derived solely from the negligence of the nurses. Appellant presented no other evidence of negligence by

that the decision to dismiss respondent in February 2011 was a tactical one, not based on the perceived merits of appellant's claims against respondent. Counsel explained that a month prior to trial, Dr. Stimmler and Bright Medical agreed to settle. Closer to trial, counsel was engaged in promising settlement negotiations with Ensign, but perceived that respondent would not settle and would insist on trying the case. In order to foreclose Ensign from conditioning any proposed settlement on receipt of a contribution from respondent, counsel decided to dismiss respondent. Subsequently, appellant entered into a settlement agreement with Ensign.

The trial court, after reviewing the parties' supporting and opposition papers and hearing argument, struck the $5,547.45 in costs respondent conceded had been improperly included. It otherwise awarded costs in the amount requested by respondent in the cost memorandum, viz., $78,165.98. This appeal followed.

## DISCUSSION

### A. Recovery of Costs for Elder Protection Act Claims

■ The Elder Protection Act contains attorney fee provisions that permit an award of attorney fees to successful plaintiffs. Specifically, Welfare and Institutions Code sections 15657 and 15657.5 provide that where it is proven by a preponderance of the evidence that the defendant is liable for "physical abuse," "neglect," or "financial abuse" as defined elsewhere in the statute, "[t]he court shall award to the plaintiff reasonable attorney's fees and costs." Similar provisions can be found in a number of other statutes creating enforceable rights, and, as numerous courts have held, such provisions allow only unilateral or one-way fee shifting and do not permit successful defendants to recover their fees.[7] Such statutes "are created by legislators as a deliberate stratagem for advancing some public purpose, usually by encouraging more effective enforcement of some important public policy" by "offer-[ing] a bounty for plaintiffs who sue to enforce a right the Legislature has

respondent. Although appellant's counsel contended respondent was responsible for the actions of the nurses because it "operat[ed]" the nursing agency, appellant presented no evidence of the nature of the relationship between respondent and the nurses or the nursing agency.

[7] See, e.g., Turner v. Association of American Medical Colleges (2011) 193 Cal.App.4th 1047, 1060–1064 [123 Cal.Rptr.3d 395] (discussing Civ. Code, §§ 52 [part of Unruh Civil Rights Act (Civ. Code, § 51 et seq.)], 54.3 [part of Disabled Persons Act]); D.C. v. Harvard-Westlake School (2009) 176 Cal.App.4th 836, 856, 864–865 [98 Cal.Rptr.3d 300] (action brought under Civ. Code, §§ 51.7 [Ralph Civil Rights Act], 52.1, subd. (h) [Tom Bane Civil Rights Act]); Covenant Mutual Ins. Co. v. Young (1986) 179 Cal.App.3d 318, 324 [225 Cal.Rptr. 861] (action for breach of warranty of authority under Civ. Code, § 3318); see also Walker v. Countrywide Home Loans, Inc. (2002) 98 Cal.App.4th 1158, 1179 [121 Cal.Rptr.2d 79] (in action for unfair competition, prevailing plaintiff, but not prevailing defendant, may seek attorney fees as private attorney general under Code Civ. Proc., § 1021.5).

chosen to favor," thereby "encourag[ing] injured parties to seek redress—and thus simultaneously enforce public policy—in situations where they otherwise would not find it economical to sue." (*Covenant Mutual Ins. Co. v. Young, supra,* 179 Cal.App.3d at pp. 324–325, italics omitted.) "The fact lawmakers offer a bounty for plaintiffs who sue to enforce a right the Legislature has chosen to favor in no sense implies it intends to offer this same bounty to defendants who show they have not violated the right." (*Id.* at p. 325, italics omitted.) "[T]o superimpose some judicially manufactured principle of 'reciprocity' on the statutes which call for one-sided fee shifting" would "frustrate the legislative intent to allow more injured people to seek redress and to encourage improved enforcement of public policy." (*Id.* at pp. 325–326.)

Some courts have taken an additional step and concluded that where all of a plaintiff's claims are closely related to claims falling under a statutory scheme with a one-way attorney fee provision, a successful defendant may not recover fees even where another relevant statutory or contractual provision would arguably permit the court to award them. For example, in *Carver v. Chevron U.S.A., Inc.* (2004) 119 Cal.App.4th 498, 503–506 [14 Cal.Rptr.3d 467] (*Carver*), where the plaintiff dealers unsuccessfully sued Chevron for breach of contract, fraud and violations of the Cartwright Act, the court held that attorney fees "related 'by inextricable overlap' " to the Cartwright Act claims were not recoverable by Chevron despite an attorney fee provision in the parties' contracts, because "[t]he Cartwright Act contains a unilateral fee-shifting provision that allows an award of attorney fees to a prevailing plaintiff but not to a prevailing defendant," and to award fees for overlapping claims would "frustrate the legislative intent" and "deter enforcement of important statutory rights." (119 Cal.App.4th at pp. 503–505, citing *Covenant Mutual Ins. Co. v. Young, supra,* 179 Cal.App.3d at pp. 325–326.)[8]

In *Wood v. Santa Monica Escrow Co.* (2007) 151 Cal.App.4th 1186 [60 Cal.Rptr.3d 597] (*Wood*), the court applied the same rationale in a case brought under the Elder Protection Act against a lender charged with financial abuse of an elder adult. The case included claims for which contractual

---

[8] Accord, *Turner v. Association of American Medical Colleges, supra,* 193 Cal.App.4th at pages 1064–1071 (no attorney fee recovery where hours spent by defendant on claim for injunctive relief—for which attorney fees were recoverable under Civ. Code, § 55 were "inextricably intertwined" with defense of plaintiff's claims under Unruh Civil Rights Act and Disabled Persons Act, both of which provide for recovery of attorney fees by plaintiff only); *Davis v. Ford Motor Credit Co. LLC* (2009) 179 Cal.App.4th 581, 600–601 [101 Cal.Rptr.3d 697] (automobile dealer could not recover attorney fees under Rees-Levering Act's reciprocal attorney fee provision (Civ. Code, § 2983.4) because Rees-Levering Act was merely a predicate for plaintiff's claim for unfair competition, and no provision of unfair competition law permits award of attorney fees to successful defendant, although plaintiff may seek fees under § 1021.5).

attorney fees were potentially available. Citing *Carver*, the court in *Wood* held: "[Unilateral fee shifting] provisions are created by the Legislature as a deliberate stratagem to encourage more effective enforcement of some important public policy. [Citation.] To [have] allow[ed] Chevron to recover fees for work on Cartwright Act issues simply because they overlap[ped] issues related to other causes of action . . . would [have] create[d] a judicially imposed reciprocity. This result [was] not intended by the Legislature and would [have] frustrate[d] legislative policy. [Citation.] . . . [¶] Section 15657.5, subdivision (a), contains the same type of unilateral fee-shifting provision discussed in *Carver*. Because, as [defendant] concedes, all the causes of action alleged here arose from a single transaction, all causes of action overlap the elder abuse cause of action. [Defendant] is not entitled to an award of fees." (151 Cal.App.4th at p. 1191.)

Relying on *Carver* and *Wood*, appellant contends that the same reasoning applied to attorney fee awards should be applied to an award of costs to a prevailing defendant, and that a plaintiff seeking to enforce the important public policies underlying the Elder Protection Act should not be concerned with the prospect of paying the defendant's expert fees or costs if the litigation is unsuccessful. Adoption of appellant's position is foreclosed by the Supreme Court's holding in *Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985 [73 Cal.Rptr.2d 682, 953 P.2d 858]. There, the court held that costs are recoverable by a defendant in situations where attorney fees would not be, due to the statutory right at issue. In *Murillo*, the unsuccessful plaintiff, a buyer of an allegedly defective motor home, had pursued a claim under the Song-Beverly Consumer Warranty Act (Civ. Code, § 1790 et seq.; Song-Beverly Act). During the course of the litigation, the plaintiff rejected the defendants' section 998 offer. After entry of judgment, the defendants sought recovery of all costs permitted by section 998, including expert witness fees. The plaintiff objected, pointing to the language of Civil Code section 1794, subdivision (d), which provides that buyers who pursue claims under the Song-Beverly Act " 'shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees . . . .' " (17 Cal.4th at p. 990.) The plaintiff contended that permitting a seller to recover "would undermine the Legislature's intent by deterring consumers from enforcing their rights under the Act by making it too expensive to do so." (*Id.* at p. 993.) The Supreme Court focused instead on section 1032, subdivision (b), which grants a prevailing party the right to recover costs " '[e]xcept as otherwise expressly provided by statute.' " (17 Cal.4th at p. 991.) The court held that because Civil Code section 1794 "makes no mention of prevailing sellers," the statute "d[id] not *expressly* disallow recovery of costs by prevailing sellers" and "any suggestion that prevailing sellers are prohibited from recovering their costs is at most *implied*." (17 Cal.4th at p. 991.) Accordingly, "based on the plain

meaning of the words of the statutes in question," the court held the defendant was entitled to costs under section 1032. (17 Cal.4th at p. 991.)

Specifically addressing recovery of expert witness fees under section 998, the court further stated: "Section 998 explicitly states that it 'augment[s]' section 1032(b). Thus, the requirements for recovery of costs and fees under section 998 must be read in conjunction with section 1032(b), including the requirement that section 998 costs and fees are available to the prevailing party '[e]xcept as otherwise *expressly* provided by statute.' (§ 1032(b), italics added.) Because the cost-shifting provisions of the Song-Beverly Act do not 'expressly' disable a prevailing defendant from recovering section 998 costs and fees in general, or expert witness fees in particular, we find nothing in the Act prohibiting the trial court's exercise of discretion to award expert witness fees to seller under the circumstances of this case. [¶] . . . [¶] . . . Although the Legislature's purpose in enacting the Song-Beverly Act was admittedly to encourage consumers to enforce their rights under the Act, nothing in Civil Code section 1794(d) suggests this legislative purpose should override the Legislature's desire—expressed in section 998—to encourage the settlement of lawsuits." (*Murillo v. Fleetwood Enterprises, Inc., supra,* 17 Cal.4th at pp. 1000–1001, fn. omitted.)[9]

■ The provision at issue here is essentially the same as the attorney fee provision in *Murillo*. Welfare and Institutions Code section 15657 provides that under certain circumstances, the court shall award reasonable attorney fees and costs to a prevailing plaintiff under the Elder Protection Act. It does not mention prevailing defendants and does not expressly disallow costs to them. By implication, it precludes an award of attorney fees to prevailing defendants, as the court recognized in *Wood*. However, costs awardable under sections 1032 and 998 cannot be precluded by implication. Accordingly, respondent was entitled to the costs, including expert witness fees, awardable under those provisions.[10]

---

[9] *Murillo* was followed in *Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132 [118 Cal.Rptr.2d 569] (the precursor to the case of the same name discussed above and cited by appellant in her brief). Defending a suit brought under the Cartwright Act which included other claims, Chevron sought and obtained an award of costs and expert witness fees pursuant to section 998. The Court of Appeal upheld the award, explaining that the Cartwright Act's unilateral attorney fee provision did not "somehow disabl[e] a prevailing defendant from recovering costs and fees in general, or Code of Civil Procedure section 998 expert witness fees in particular. . . ." "While there are public policy restrictions on applying a reciprocal right to an attorney fees contractual provision in [the] statutory context of the Cartwright Act . . . , this section does not affect an otherwise valid Code of Civil Procedure section 998 entitlement . . . ." (97 Cal.App.4th at pp. 153–154.)

[10] Appellant's suggestion that the legislative history of the Elder Protection Act—specifically Welfare and Institutions Code section 15600, subdivisions (h) and (j)—compels a different result is unavailing. First, as noted above, our Supreme Court has held that where a statute

B. *Reasonableness of Offer*

Appellant contends, alternatively, that respondent was not entitled to section 998 costs because the offer it made in February 2010 was not reasonable or made in good faith.

■ There is no dispute that "a good faith requirement must be read into section 998 in order to effectuate the purpose of the statute." (*Adams v. Ford Motor Co.* (2011) 199 Cal.App.4th 1475, 1483 [132 Cal.Rptr.3d 424], citing *Wear v. Calderon* (1981) 121 Cal.App.3d 818, 821 [175 Cal.Rptr. 566].) "Good faith . . . requires that the settlement offer be 'realistically reasonable under the circumstances of the particular case.' " (199 Cal.App.4th at p. 1483.) "The offer must therefore, 'carry with it some reasonable prospect of acceptance. [Citation.]' " (*Ibid.*, quoting *Elrod v. Oregon Cummins Diesel, Inc.* (1987) 195 Cal.App.3d 692, 698 [241 Cal.Rptr. 108].) "[A] party having no expectation that his offer will be accepted 'will not be allowed to benefit from a no-risk offer made for the sole purpose of later recovering large expert witness fees.' " (199 Cal.App.4th at p. 1483, quoting *Jones v. Dumrichob* (1998) 63 Cal.App.4th 1258, 1263 [74 Cal.Rptr.2d 607].)

■ "Even a modest or 'token' offer may be reasonable if an action is completely lacking in merit." (*Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 134 [84 Cal.Rptr.2d 753].) "When a defendant perceives himself to be fault free and has concluded that he has a very significant likelihood of prevailing at trial, it is consistent with the legislative purpose of section 998 for the defendant to make a modest settlement offer. If the offer is refused, it is also consistent with the legislative intent for the defendant to engage the services of experts to assist him in establishing that he is not liable to the plaintiff. It is also consistent with the legislative purpose under such circumstances to require the plaintiff to reimburse the defendant for the costs thus incurred." (*Culbertson v. R. D. Werner Co., Inc.* (1987) 190 Cal.App.3d 704, 710–711 [235 Cal.Rptr. 510].)

does not expressly disallow costs to a prevailing defendant, costs awardable under sections 1032 and 998 cannot be precluded by implication. (*Murillo v. Fleetwood Enterprises, Inc., supra,* 17 Cal.4th at pp. 989–999.) The Elder Protection Act contains no such provision, and no expression of legislative intent can override a construction of statutory language articulated by our highest court. Second, in deciding *Murillo,* the court expressly recognized the legislative intent invoked by appellant here—to encourage suits that would not otherwise be brought—by providing for an award of attorney fees to prevailing plaintiffs. (17 Cal.4th at p. 994.) It found, however, that such intent would not be thwarted by allowing a prevailing defendant to recover costs, and that the one-way pro-consumer attorney-fee-shifting mechanism was "sufficient to support the Legislature's pro-consumer purpose." (*Id.* at p. 996.) Any argument that "the playing field should be tilted even more" in favor of consumer-plaintiffs, the court noted, "is more properly addressed to the Legislature." (*Id.* at p. 994.) The same reasoning applies here.

■ Where the defendant obtains a judgment more favorable than its offer, " 'the judgment constitutes prima facie evidence showing the offer was reasonable . . . .' " (*Santantonio v. Westinghouse Broadcasting Co.* (1994) 25 Cal.App.4th 102, 117 [30 Cal.Rptr.2d 486].) It is the plaintiff's burden to show otherwise. (*Nelson v. Anderson, supra,* 72 Cal.App.4th at p. 134.) "The reasonableness of a defendant's section 998 settlement offer is evaluated in light of 'what the offeree knows or does not know at the time the offer is made . . . .' " (*Adams v. Ford Motor Co., supra,* 199 Cal.App.4th at p. 1485, quoting *Santantonio v. Westinghouse Broadcasting Co., supra,* at p. 119.)

"Whether a section 998 offer was reasonable and made in good faith is left to 'the sound discretion of the trial court.' " (*Adams v. Ford Motor Co., supra,* 199 Cal.App.4th at p. 1484, quoting *Elrod v. Oregon Cummins Diesel, Inc., supra,* 195 Cal.App.3d at p. 700.) We review the trial court's award of costs under section 998 for abuse of discretion. (*Jones v. Dumrichob, supra,* 63 Cal.App.4th at p. 1262.) We will reverse the trial court's determination only if we find that "in light of all the evidence viewed most favorably in support of the trial court, no judge could have reasonably reached a similar result." (199 Cal.App.4th at p. 1484.)

■ Here, the dismissal resulted in zero liability for respondent and established the prima facie reasonableness of the section 998 offer. The burden was on appellant to establish unreasonableness or lack of good faith. Appellant failed to meet her burden. Preliminarily, we note that in contesting the reasonableness of the offer, appellant focused on the evidence she had gathered to support her claims as of the February 2011 date on which she voluntarily dismissed respondent. Appellant presented no evidence concerning the parties' understanding of the relative strengths and weaknesses of the claims as of February 2010, the date respondent served the offer. Moreover, judging from the information in the record, even on the eve of trial, the evidence supporting appellant's claim against respondent was weak. Appellant apparently abandoned her claim that respondent's medical personnel mistreated Rinda during her October 2006 hospital stay or after her readmission in November. According to appellant's expert, respondent's culpability derived solely from the negligence of the home nurses. But even assuming the home nurses could have been deemed negligent after having notified Rinda's doctor of the seriousness of the pressure sore and leaving further medical decisions in his hands, the basis for holding respondent liable for the actions of the home nurses remained unclear. The nurses were in the employ of Arcadia and appellant had only made vague allegations, unsupported by evidence, concerning the connection between respondent and Arcadia. Although appellant's counsel stated his last-minute dismissal of respondent was not based on his perceived merits of the case, the court was not required to accept that statement at face value and could reasonably conclude that the dismissal represented an acknowledgment of the tenuous nature of appellant's

claims against respondent. Finally, the court could reasonably have found that respondent's offer was not a mere token. ■ "[A] section 998 offer has value beyond the monetary award provided if it also includes a waiver of costs" because " 'if accepted, it would . . . eliminate[] [the offeree's] exposure to the very costs which are the subject of [the] appeal.' " (*Adams v. Ford Motor Co., supra*, 199 Cal.App.4th at p. 1485, quoting *Jones v. Dumrichob, supra*, 63 Cal.App.4th at p. 1264.) Here, costs were expected to be substantial due to the necessity of retaining multiple medical experts. Moreover, respondent offered not only to waive costs but to forego any future litigation over the propriety of the claim. Thus, the offer had substantial value when weighed against appellant's prospects of success, and the trial court's conclusion that the section 998 offer was reasonable and made in good faith was fully supported. There was no abuse of discretion in denying appellant's motion.

### C. *Undesignated Expert*

■ Appellant contends that because one of respondent's experts, Halcyon Hamel, R.N., was retained as a consultant only and never designated as a witness, the cost of her expert services was not recoverable. Section 998 states that fees for expert witnesses "actually incurred and reasonably necessary in . . . preparation for trial" are recoverable. (§ 998, subd. (c)(1).) Although the statute refers to expert witnesses, courts have recognized that "section 998 . . . covers the cost of experts who aid in the preparation of the case for trial, even if they do not actually testify." (*Santantonio v. Westinghouse Broadcasting Co., supra*, 25 Cal.App.4th at p. 124.) Appellant does not dispute Ms. Hamel's qualification as an expert, and we decline to find the trial court abused its discretion in awarding respondent the costs of her services.

### D. *Preoffer Expert Witness Fees*

■ Appellant contends that only postoffer expert witness fees are recoverable, and that the court erred in awarding respondent all its expert witness costs without regard to when they were incurred. "[E]xpert witness fees under Code of Civil Procedure section 998, subdivision (c) have never been tied to when these fees were incurred relative to a compromise offer." (*Regency Outdoor Advertising, Inc. v. City of Los Angeles* (2006) 39 Cal.4th 507, 532 [46 Cal.Rptr.3d 742, 139 P.3d 119], italics omitted.) "The first sentence [of section 998, subdivision (c)(1)] limits recoverable 'costs' to those incurred from the time of the offer. The second sentence, which relates to the 'costs of the services of expert witnesses,' contains no such limitation." (*Ibid.*)

## DISPOSITION

The order is affirmed. Respondent is awarded costs on appeal.

Epstein, P. J., and Willhite, J., concurred.

A petition for a rehearing was denied March 9, 2012, and on March 22, 2012, the opinion was modified to read as printed above.