Filed 5/12/22  SwiftAir v. Row 44 CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| SWIFTAIR, LLC,<br><br>        Plaintiff and Appellant,<br><br>    v.<br><br>ROW 44, INC. et al.,<br><br>        Defendants and Respondents. | B306166<br><br>(Los Angeles County<br>Super. Ct. No. SC122964) |

        APPEAL from orders of the Superior Court of Los Angeles County.  Elaine W. Mandel, Judge.  Affirmed.
        Holmgren Johnson: Mitchell Madden and Dennis M. Holmgren; Shamoun & Norman and Stephen R. Tittle, Jr., for Plaintiff and Appellant.
        Sheppard, Mullin, Richter & Hampton, Martin D. Katz, and Dylan J. Price for Defendant and Respondent Row 44, Inc.
        Hawxhurst Harris, Gerald E. Hawxhurst, David S. Harris and Patrick B. Nichols; Hawxhurst, Gerald E. Hawxhurst and

Patrick B. Nichols; Davis S. Harris and David S. Harris for Defendant and Respondent Southwest Airlines Co.

## INTRODUCTION

SwiftAir, LLC appeals from the trial court's orders granting motions by Southwest Airlines Co. and Row 44, Inc. for attorneys' fees and costs. SwiftAir argues the court erred in ruling Southwest and Row 44 were entitled to attorneys' fees as prevailing parties under the relevant contracts. SwiftAir also argues that, because Southwest's offer to compromise under Code of Civil Procedure section 998 was unreasonable,[1] the trial court erred in awarding Southwest $209,886.89 in fees for experts not ordered by the court. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *SwiftAir Develops a Software Platform That Southwest Decides Not To License*

As we described in *SwiftAir, LLC v. Southwest Airlines Co.* (2022) 77 Cal.App.5th 46 (*SwiftAir I*), in 2010 SwiftAir was developing a software platform that would allow passengers to make inflight purchases of coupons and vouchers the passengers could use at restaurants and other businesses in their destination cities. Later that year Southwest expressed an interest in evaluating the software platform for use on its flights.

In August 2011 SwiftAir and Southwest entered into a contract titled "Beta Test Agreement," with Southwest agreeing

---

[1]    Undesignated statutory references are to the Code of Civil Procedure.

to evaluate SwiftAir's software platform by testing it for eight weeks on some of Southwest's WiFi-enabled aircraft, to report to SwiftAir during the testing period on the software's performance, and to notify SwiftAir within 30 days after the testing period ended whether Southwest intended to use the software "on an extended basis." The agreement also stated that, in the event Southwest decided to continue using the software platform, Southwest and SwiftAir would "enter into good faith discussions prior to the termination of the Initial Term [of testing] to negotiate a full license agreement." The parties subsequently amended the Beta Test Agreement to extend the testing period to 24 weeks. Installing the software platform on Southwest's planes also required SwiftAir to enter into agreements with Row 44, the company that operated Southwest's inflight WiFi service. (*SwiftAir I*, *supra*, 77 Cal.App.5th at p. 50.)

At the end of the testing period, Southwest had not decided whether to license SwiftAir's software platform, but Southwest continued "'to work toward some arrangement whereby the SwiftAir product would be refined and deployed ultimately to Southwest planes.'" Ultimately, Southwest decided not to license SwiftAir's software platform. (*SwiftAir I*, *supra*, 77 Cal.App.5th at p. 50.)

      B.    *SwiftAir Sues Southwest and Row 44, Loses, and Appeals*

In August 2014 SwiftAir filed this action against Southwest and Row 44.[2] In the operative first amended complaint SwiftAir

___

[2] Row 44 reports that, as a result of bankruptcy proceedings discussed below, "substantially all" of its assets have been sold to

3

asserted 12 causes of action against both defendants, including for breach of contract and the covenant of good faith and fair dealing, quantum meruit, and interference with contractual relations and prospective economic advantage. (*SwiftAir I*, *supra*, 77 Cal.App.5th at p. 51.) The trial court sustained a demurrer by Row 44 to four of the causes of action against it without leave to amend. Southwest and Row 44 then each filed a motion for summary judgment or, in the alternative, summary adjudication, arguing, among other things, the federal Airline Deregulation Act (49 U.S.C. § 41713(b)(1)) (ADA) preempted most of SwiftAir's remaining causes of action. Row 44 also moved for summary adjudication on SwiftAir's claims that Row 44 committed various distinct breaches of agreements between Row 44 and SwiftAir, as alleged in SwiftAir's first cause of action.

The trial court ruled the ADA preempted all of SwiftAir's remaining causes of action except for the first (against both defendants) for breach of contract (which included a claim for breach of the covenant of good faith and fair dealing). The court therefore granted motions by Southwest and Row 44 for

---

"GEE Acquisition Holdings Corp. and its designees, which included Row 44's rights of recovery against SwiftAir in connection with the trial court's post-judgment award of attorneys' fees and costs." Because there has been no motion to substitute another entity in the action, however, this appeal may continue in the name of Row 44. (See § 368.5 ["An action or proceeding does not abate by the transfer of an interest in the action or proceeding or by any other transfer of an interest. The action or proceeding may be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action or proceeding."].)

summary adjudication on all other remaining causes of action. In addition, on the breach of contract cause of action against Row 44, the court summarily adjudicated in favor of Row 44 some, but not all, of the alleged "separate and distinct breaches." Finally, on a motion by Southwest for reconsideration, the court also granted summary adjudication on that portion of the first cause of action against Southwest that alleged breach of the covenant of good faith and fair dealing.

At this point, what remained of SwiftAir's lone breach of contract cause of action against Southwest were claims based on two alleged breaches. First, SwiftAir alleged Southwest breached the Beta Test Agreement by not entering into good-faith discussions to negotiate a full licensing agreement and by not timely removing SwiftAir's software platform from Southwest's planes after the testing period. Second, SwiftAir alleged Southwest breached an implied-in-fact agreement requiring it to install SwiftAir's software platform on "WiFi-enabled aircraft flying into 11 of Southwest's top destinations, with more cities added throughout the term" of the Beta Test Agreement.

Southwest now served SwiftAir with an offer to compromise under section 998. In exchange for SwiftAir's voluntary dismissal with prejudice of all claims against Southwest, Southwest offered to pay SwiftAir $50,000 and to agree that SwiftAir and Southwest would each bear its attorneys' and expert fees, costs, and expenses. In an accompanying letter, Southwest wrote that it believed "this offer is more than reasonable in light of the Court's recent summary judgment rulings . . . . As you have previously acknowledged, SwiftAir does not have damages related to . . . the Beta Test Agreement . . . . Further, SwiftAir's expert report . . . fails to identify any damages

related to" agreements between Southwest and SwiftAir. SwiftAir did not respond to the offer to compromise.

The parties tried SwiftAir's remaining causes of action to a jury. Finding that Southwest breached the Beta Test Agreement, but that the breach did not harm SwiftAir, the jury awarded SwiftAir no damages for the breach. Finding SwiftAir did not substantially perform its obligations under the implied-in-fact agreement with Southwest and was not excused from doing so, the jury found Southwest was not liable for any breach of that agreement. The jury found Row 44 was not liable on the cause of action against it.

SwiftAir filed motions for judgment notwithstanding the verdict and for a new trial, contending that, because the jury found Southwest breached the Beta Test Agreement, the jury should have awarded SwiftAir $878,000 in damages "for the monies SwiftAir [spent] developing" its software platform. The trial court denied these motions, and SwiftAir appealed from the judgment.

C.    *The Trial Court Grants Motions by Southwest and Row 44 for Attorneys' Fees, and SwiftAir Files This Appeal*

Meanwhile, citing attorneys' fees provisions in their agreements with SwiftAir, Southwest and Row 44 each filed a postjudgment motion for attorneys' fees and costs as a prevailing party in the action. Southwest also contended it was entitled to attorneys' fees and costs because SwiftAir failed to achieve a more favorable result than the one Southwest proposed in its section 998 offer to compromise.

6

Concluding Southwest and Row 44 were prevailing parties, the trial court granted their motions. The court awarded Southwest $1,501,988.80 in attorneys' fees and $309,362.40 in costs. The court denied a motion by SwiftAir to strike from Southwest's memorandum of costs $209,886.89 in expert fees, ruling Southwest was entitled to recover those fees under section 998. The court awarded Row 44 $2,216,117.50 in attorneys' fees and $57,830.44 in costs. SwiftAir timely appealed the orders granting the motions. That's this appeal.

D.     *In the Appeal from the Judgment, We Dismiss Row 44 and Affirm the Judgment in Favor of Southwest*

And again meanwhile, with SwiftAir's two appeals pending, Row 44 and various affiliates filed for bankruptcy under Chapter 11 of the United States Bankruptcy Code, which resulted in stays of both appeals. After the bankruptcy court confirmed a plan, Row 44 asked this court to dismiss it from SwiftAir's appeal from the judgment (but not from this appeal). Pointing out that SwiftAir had not filed a proof of claim in the bankruptcy proceeding, Row 44 argued the bankruptcy plan and confirmation order barred SwiftAir from pursuing any claims against Row 44, including the claims asserted in this action. After receiving opposition from SwiftAir, we granted Row 44's request and dismissed Row 44 from the appeal from the judgment. The Supreme Court denied SwiftAir's petition for review.

SwiftAir's appeal from the judgment in favor of Southwest, however, proceeded. SwiftAir contended the trial court erred in granting Southwest's motion for summary adjudication because the ADA did not preempt any of SwiftAir's causes of action and in

7

denying SwiftAir's motions for judgment notwithstanding the verdict and for a new trial because the jury should have awarded $878,000 in damages on SwiftAir's breach of contract cause of action against Southwest. We rejected those contentions and affirmed the judgment. (*SwiftAir I*, *supra*, 77 Cal.App.5th at p. 59.)

## DISCUSSION

A.    *The Trial Court Did Not Err in Granting Southwest's Motion for Attorneys' Fees*

SwiftAir argues that in granting Southwest's motion for attorneys' fees the trial court erred in two respects. First, SwiftAir argues the court erred in ruling Southwest was a prevailing party because that ruling rested on the orders SwiftAir challenged in its appeal from the judgment: the orders granting Southwest's motion for summary adjudication and denying SwiftAir's motions for judgment notwithstanding the verdict and for a new trial. In that appeal, however, we concluded the trial court did not err. Therefore, the court did not err in ruling Southwest was a prevailing party.

Second, SwiftAir argues the trial court erred by awarding Southwest $209,886.89 in expert witness fees. SwiftAir argues Southwest was not entitled to recover those costs under section 998 because the experts were not ordered by the court and because Southwest's offer to compromise was not reasonable.[3]  This argument is meritless.

---

[3]    "Fees of experts not ordered by the court are not ordinarily recoverable as costs to a prevailing party, unless expressly

8

"Section 998 allows for any party in a civil suit to serve a settlement offer to any other party before the commencement of trial.  Section 998, subdivision (c)(1) provides that '[i]f an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover his or her postoffer costs and shall pay the defendant's costs from the time of the offer.  In addition, . . . the court . . . , in its discretion, may require the plaintiff to pay a reasonable sum to cover costs of the services of expert witnesses . . . actually incurred and reasonably necessary in . . . preparation for trial or arbitration . . . of the case by the defendant.'"[4] (*Adams v. Ford Motor Co.* (2011) 199 Cal.App.4th 1475, 1482-1483 (*Adams*); see *id.* at p. 1483 [section 998, subdivision (c), "gives the trial court discretion to award a prevailing defendant the costs of expert witnesses whether incurred before or after the settlement offer"].)

The "purpose of section 998 is to encourage the settlement of litigation without trial," and to effectuate that purpose, courts have read a "good faith requirement" into the statute.  (*Adams*, *supra*, 199 Cal.App.4th at p. 1483.)  Thus, "[o]nly settlement offers made in good faith are effective under section 998." (*Covert v. FCA USA, LLC* (2022) 73 Cal.App.5th 821, 833 (*Covert*).)  Good faith "requires that the settlement offer be

---

authorized by law."  (*Holman v. Altana Pharma US, Inc.* (2010) 186 Cal.App.4th 262, 278; see §§ 1032, subd. (b), 1033.5, subd. (b)(1).)

[4] Section 998, subdivision (c)(1), thus provides an exception to the general rule that fees of experts not ordered by the court are not allowable as costs.  (See *Covert v. FCA USA, LLC* (2022) 73 Cal.App.5th 821, 832; *Holman v. Altana Pharma US, Inc.* (2010) 186 Cal.App.4th 262, 278.)

'realistically reasonable under the circumstances of the particular case.' [Citation.] The offer must therefore 'carry with it some reasonable prospect of acceptance.'" (*Adams*, at p. 1483.)

"'Whether a section 998 offer has a reasonable prospect of acceptance is a function of two considerations, both to be evaluated in light of the circumstances '"at the time of the offer"' and '"not by virtue of hindsight."' [Citations.] First, was the 998 offer within the "range of reasonably possible results" at trial, considering all of the information the offeror knew or reasonably should have known? [Citation.] Second, did the offeror know that the offeree had sufficient information, based on what the offeree knew or reasonably should have known, to assess whether the "offer [was] a reasonable one," such that the offeree had a "fair opportunity to intelligently evaluate the offer"?'" (*Covert*, *supra*, 73 Cal.App.5th at p. 834.)

"'Although the party making a 998 offer generally has the burden of showing that [the] offer is valid [citations],[5] it is the 998 offeree who bears the burden of showing that an otherwise valid 998 offer was not made in good faith.'" (*Covert*, *supra*, 73 Cal.App.5th at p. 834; see *id.* at p. 833 ["Once the offeror shows the section 998 offer is valid, the burden shifts to the offeree to show the offer was not made in good faith."].) "'"Where . . . the offeror obtains a judgment more favorable than its offer, the judgment constitutes prima facie evidence showing the offer was reasonable and the offeror is eligible for costs as

---

[5] To be valid, an offer to compromise under section 998 must, for example, '"'be sufficiently specific to allow the recipient to evaluate the worth of the offer and make a reasoned decision whether to accept the offer.'"'" (*Covert*, *supra*, 73 Cal.App.5th at p. 833.)

specified in section 998."''"  (*Id.* at pp. 833-834; see *Adams, supra,* 199 Cal.App.4th at p. 1484.)  "'"Whether a section 998 offer was reasonable and made in good faith is a matter left to the sound discretion of the trial court, and will not be reversed on appeal except for a clear abuse of discretion."''"  (*Covert*, at p. 834; see *Adams*, at p. 1484 ["An appellate court may reverse the trial court's determination only if the court finds that in light of all the evidence viewed most favorably in support of the trial court, no judge could have reasonably reached a similar result."].)

The trial court did not abuse its discretion in finding (implicitly) Southwest made a reasonable, good faith offer to compromise.  That the judgment Southwest obtained—of zero liability and the entitlement to recover, as a prevailing party, its attorneys' fees and costs—was more favorable than its offer—of $50,000 and a waiver of fees and costs—is prima facie evidence the offer was reasonable.  (See *Bates v. Presbyterian Intercommunity Hospital, Inc.* (2012) 204 Cal.App.4th 210, 221 [dismissal resulting in zero liability for the respondent "established the prima facie reasonableness of the section 998 offer"].)

SwiftAir did not rebut that evidence.  Citing *Wear v. Calderon* (1981) 121 Cal.App.3d 818 for the proposition that a "plaintiff may not reasonably be expected to accept a token or nominal offer from any defendant exposed to [substantial] liability unless it is absolutely clear that no reasonable possibility exists that the defendant will be held liable" (*id.* at p. 821), SwiftAir argues it could not reasonably be expected to accept Southwest's offer because it was merely a token offer and there was a reasonable possibility Southwest would be held liable, as

11

demonstrated by the jury's finding Southwest breached the Beta Test Agreement.

But Southwest's offer was not token. $50,000 was not a nominal offer, even relative to the $878,000 SwiftAir insists Southwest owed (but the jury found it did not owe) for breaching the Beta Test Agreement. (Compare *Najah v. Scottsdale Ins. Co.* (2014) 230 Cal.App.4th 125, 145 [where the evidence at the time of the section 998 offer supported the plaintiff's claim for damages in excess of $500,000, the trial court did not abuse its discretion in concluding the defendant's offer of $30,000 was reasonable, "given the reasonable possibility that liability did not exist"] with *Wear v. Calderon, supra*, 121 Cal.App.3d at pp. 819-820 [section 998 offer to settle for $1 was a token offer] and *Pineda v. Los Angeles Turf Club, Inc.* (1980) 112 Cal.App.3d 53, 62-63 [where the plaintiff sought $10 million in damages, the trial court did not abuse its discretion in finding a section 998 offer of $2,500 was not reasonable].) And Southwest's proposal to bear its fees and costs added significant value to the offer. (See *Adams, supra*, 199 Cal.App.4th at p. 1485 ["a section 998 offer has value beyond the monetary award provided if it also includes a waiver of costs"]; *Jones v. Dumrichob* (1998) 63 Cal.App.4th 1258, 1264 [section 998 offer that included a waiver of costs but no monetary award was reasonable because it "carried a significant value to" the offerees-appellants: "if accepted, it would have eliminated appellants' exposure to the very costs which are the subject of this appeal"].)

12

B.     *The Trial Court Did Not Err in Granting Row 44's Motion for Attorneys' Fees*

SwiftAir contends the trial court erred in granting Row 44's motion for attorneys' fees because that order "was based upon erroneous judgments [*sic*] in Row 44's favor." More specifically, SwiftAir argues the trial court's ruling Row 44 was a prevailing party rested on the court's supposedly erroneous order granting Row 44's motion for summary adjudication. SwiftAir argues the latter order was erroneous because the ADA did not preempt any of its causes of action against Row 44 and because, in ruling on issues relating to but not disposing of the entire cause of action for breach of contract, the court violated section 437c, subdivision (f)(1).

As discussed, however, over SwiftAir's objection we dismissed Row 44 from SwiftAir's appeal from the judgment, which "amounts to an affirmance of the judgment."[6] (*Estate of*

---

[6]     SwiftAir did not file a proof of claim in Row 44's bankruptcy proceeding or seek relief from the resulting automatic stay, and it has not persuasively addressed Row 44's assertion these were SwiftAir's "only proper avenue[s] to attack the Underlying Judgment." (See 11 U.S.C. §§ 101(10) [defining "creditor" as an "entity that has a claim against the debtor that arose at the time of or before" the filing of the bankruptcy petition], 101(5) [defining "claim" as "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured"]; *In re Maxus Energy Corporation* (Bankr. D.Del., 2022) 706 __B.R. ___, ___ [2022 WL 840996, p. 9] ["if a creditor has a claim, whether that claim be disputed, contingent, or unliquidated, it must file a proof of claim"].) Without citing any legal authority, SwiftAir suggests it

13

*Basso* (1947) 79 Cal.App.2d 758, 760; see *In re Jasmon O.* (1994) 8 Cal.4th 398, 413 ["Normally the involuntary dismissal of an appeal leaves the judgment intact."]; *County of Sacramento v. Rawat* (2021) 65 Cal.App.5th 858, 869 ["In general, the unqualified dismissal of an appeal leaves the trial court's judgment or order standing, as if no appeal had been taken from it."]; *City of Santa Paula v. Narula* (2003) 114 Cal.App.4th 485, 492 ["An 'involuntary dismissal of an appeal operates as an affirmance of the judgment below.'"].)  Therefore, SwiftAir can no longer challenge the merits of the judgment in favor of Row 44. (See *Conservatorship of Ribal* (2019) 31 Cal.App.5th 519, 526 [on appeal from a postjudgment order awarding attorneys' fees after the previous appeal resulted in affirmance of the judgment, the appellant could not challenge the merits of the judgment]; *Narula*, at p. 488 [on appeal from a postjudgment order awarding attorneys' fees, the appellants were "barred . . . from challenging the validity of prior judgments"].)  Because that is SwiftAir's only

_____

could not file a proof of claim because "it had already been judicially determined [i.e., by the trial court in this case] that SwiftAir had no claim."  But this suggestion ignores both the Bankruptcy Code's definition of "claim" and the fact that, because SwiftAir had appealed from the judgment, its causes of action against Row 44 in this case were not yet final.  (See *Archdale v. American Internat. Specialty Lines Ins. Co.* (2007) 154 Cal.App.4th 449, 479 ["'[A] judgment does not become final so long as the action in which it was rendered is pending and an action is deemed pending until it is finally determined on appeal or until the time for appeal has passed.  The determination of the issue in the case is held in abeyance until the appeal is finally decided by an appellate court and the appeal operates to '"keep alive the case . . . as it existed before the judgment was rendered."'"'].)

ground for challenging the trial court's order granting Row 44's motion for attorneys' fees, SwiftAir has failed to demonstrate error.

## DISPOSITION

The motion by Row 44 to dismiss the appeal is denied. The trial court's orders granting the motions by Southwest and Row 44 for attorneys' fees and costs are affirmed. Southwest and Row 44 are to recover their costs in this appeal.

SEGAL, J.

We concur:

PERLUSS, P. J.

FEUER, J.

15