Filed 6/22/21  Lerdahl v. Milber CA1/5

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| ANNETTE LERDAHL, as Conservator, etc., <br><br>    Plaintiff and Appellant, <br><br> v. <br><br> DIANE R. MILBER et al., <br><br>    Defendants and Respondents. | A159167 <br><br> (Sonoma County <br> Super. Ct. No. SCV 260207) |
| ANNETTE LERDAHL, as Conservator, etc., <br><br>    Plaintiff and Respondent, <br><br> v. <br><br> DIANE R. MILBER et al., <br><br>    Defendants and Appellants. | A160788 <br><br> (Sonoma County <br> Super. Ct. No. SCV 260207) |

In these consolidated appeals, we consider challenges to postjudgment rulings regarding attorney's fees and expert witness fees.

Plaintiff Louis J. Watts, Jr. (Watts), through the conservator of his estate, Annette Lerdahl, sued Diane Milber and members of her family for

causes of action including financial elder abuse.[1]  Based on the jury's special verdict findings, the trial court entered a judgment against Watts.

The trial court subsequently denied Watts's postjudgment motions, which sought, among other things, an award of attorney's fees.  But the court also granted in part Watts's motion to strike and tax costs, determining the Milbers were not entitled to recover costs for expert witness fees.  Watts appeals the denial of his request for attorney fees, and the Milbers appeal the denial of their request for expert witness fees.

Based on the jury's findings, and our interpretation of Welfare and Institutions Code, section 15657.5, subdivision (a), we conclude Watts is not entitled to attorney fees because he did not prove the Milbers were "liable for financial abuse."[2]  (*Ibid.*)  Moreover, we find no abuse of discretion in the trial court's denial of the Milbers's request for expert witness fees.  Accordingly, we affirm.

## BACKGROUND

In February 2017, Watts filed a complaint against Diane and members of her family asserting causes of action for conversion, fraud, civil theft, breaches of fiduciary duty, and elder abuse.  Watts alleged Diane, a certified public accountant and insurance agent, sold him annuities worth approximately $400,000.  Around 2014, Diane became Watts's attorney-in-fact.  Using her power of attorney, she created a trust called the "Gold Lake Trust," and she transferred the annuities into it.  The Gold Lake Trust

---

[1] For the sake of convenience, we sometimes refer to the defendants individually by their first names.  In doing so, we intend no disrespect.  We refer to Diane and her husband, Edward, collectively as "the Milbers."  Even though plaintiff has a conservator, we follow the practice of the parties and refer to him as "Watts."

[2] Undesignated statutory references are to the Welfare and Institutions Code.

named Diane's husband, Edward, as the trustee, their son, Jeffrey, as the successor trustee, and their other son, James, as the sole beneficiary.

In October 2017, about eight months after they were sued by Watts, Diane and members of her family filed a probate petition seeking to modify and terminate the Gold Lake Trust. In February 2018, the probate court issued an order voiding the trust. It explained: "Diane Milber admits to being in a fiduciary relationship with settlor Louis J. Watts, Jr., when she helped Mr. Watts draft the trust. The beneficiary is Ms. Milber's son. Thus, pursuant to [Probate] Code section 21380, the gift is presumed to be a product of fraud or undue influence. As the donative transfers to prohibited transferees are void, the trust fails for lack of a beneficiary." The court directed the petitioners to "turn over all assets held in the trust to the settlor's conservator Annette Lerdahl." It further explained that its ruling was "not intended to have any effect on liability or damages for the currently pending civil action." The annuities formerly held in the Gold Lake Trust were thereafter returned to Watts.

In December 2018—almost two years after the original complaint was filed—the Milbers served Watts with a Code of Civil Procedure section 998 offer to settle for $75,000 (998 offer or offer). Watts did not accept the offer.

In the civil action, Watts filed the operative second amended complaint in January 2019. The complaint contained causes of action for fraud, receiving stolen property, breach of fiduciary duty, common law undue influence, statutory fraud or undue influence, and elder abuse. Watts alleged that, after Diane became his attorney-in-fact, she changed the beneficiary designations on the annuities—referred to as the "Allianz" annuity and the "Athene" annuity—making her sons, James and Jeffrey, the beneficiaries of the annuities.

3

The jury trial commenced in early May 2019.[3]  The jury was instructed that Watts was seeking economic damages measured by "[t]he value of the Allianz and Athene Annuities."  The jury returned a verdict in June 2019.  It is not a model of clarity.

Regarding the financial elder abuse cause of action, the special verdict form indicates the jury found that Diane obtained or retained, or assisted in obtaining or retaining, Watts's property; she did so for a wrongful use, or with the intent to defraud, or by undue influence; and Watts was 65 years of age or older at the time of the conduct.  But the jury also found that Watts was not thereby harmed, and that Diane's conduct was not a substantial factor in causing harm to Watts.  The jury also found that Edward obtained or retained, or assisted in obtaining or retaining, Watts's property.  But the jury made no finding regarding whether he did so for a wrongful use, or with the intent to defraud, or by undue influence, whether Watts was harmed, or whether Edward's conduct caused harm to Watts.

Under "Damages" on the special verdict form, when asked whether Diane or Edward were "liable under any of the preceding legal theories," the jury answered "Yes."[4]  The next question asked, "What are Louis Watts's damages?" and the form stated:  "**Damages for the value of the Allianz and Athene Annuities**.  [¶]  Enter the amount below if you find that Diane Milber or Edward Milber is liable to Louis Watts under the theories of fraud,

---

[3] Before trial, Diane's son, Jeffrey, was dismissed from the action; her son, James, was dismissed on the first day of trial.

[4] The special verdict form indicates the jury found Diane "liable" for fraud and undue influence.  The special verdict form reflects no findings regarding the receiving stolen property causes of action against the Milbers.  Finally, the jury found that Diane intentionally breached her fiduciary duty to Watts, but it made no finding regarding whether that breach caused harm to Watts.

4

undue influence, breach of fiduciary duty, financial elder abuse, or receiving stolen property." The jury entered "$0.00." Under "Punitive Damages," the jury was asked whether Diane was "liable under any of the preceding theories?" The jury answered "Yes." But the jury made no finding as to whether Edward was liable under any of the preceding theories or whether he or Diane acted with fraud, oppression, or malice.

After the verdict, the parties filed briefs regarding the legal effect of the jury's answers on the special verdict form. In August 2019, the court entered an order directing the clerk to record the verdict. In its order, the court indicated the jury found that Watts suffered no damages and that "[t]he jury therefore did make a finding of fact *necessary to dispose* of liability." The court continued: "Damage is an element of each cause of action. Plaintiff has waived any argument to the contrary by requesting the given jury instructions and preparing the proposed verdict form, both of which instructed on damages as a necessary element of the causes of action. Even if plaintiff had not waived this claim, the court finds it is without merit, particularly as to the Elder Abuse cause of action. The jury's finding that the plaintiff suffered no damages under any of the five theories of liability as to either defendant is therefore dispositive as to all causes of action."

The trial court rejected Watts's "claim that the factual finding of zero damages is unsupported by the evidence. The finding reflects the jury's determination that since the annuities had been returned, and no other item of damages was requested, the plaintiff suffered no monetary loss. This finding by the jury is logical and consistent with the evidence. This conclusion is further bolstered by the jury's findings on the cause of action for financial elder abuse by Diane Milber. The jury found Mr. Watts was not harmed. This finding of fact is internally consistent with the jury's finding of

5

$0.00 damages in light of the fact the evidence showed that the annuities had been returned prior to the trial, were valued at as much or more as when they were taken, and no other item of damages was requested."

In September 2019, the trial court entered the judgment. The judgment provides that the jury found Watts "suffered no damages under any of the causes of action alleged against the defendants. Thereafter, the Court determined the jury's verdict was dispositive of all plaintiff's counts and causes of action against the defendants and directed the court clerk to record a verdict in favor of the defendants." In the judgment, the court ordered that Watts "shall recover nothing from defendants," and that the defendants may recover costs, including attorney's fees, in an amount to be determined.

Watts moved for a new trial and to vacate the judgment and enter a different partial judgment. Watts also filed a motion to set an award of attorney and conservator fees. The Milbers opposed the motions. In November 2019, the trial court denied Watts's motions. Watts appeals.

For their part, the Milbers filed a costs memorandum seeking $68,994.89 in costs and $125,257.90 in expert witness fees. The parties agreed to extend the deadline for Watts to move to strike or tax costs. (See Cal. Rules of Court, rule 3.1700(b)(3).) Two days before the stipulated deadline, Watts filed a one-paragraph "placeholder" motion stating he intended to move to strike the Milbers's costs.

Several weeks later, Watts filed a second or so-called "amended" motion. This motion, supported by a lengthy memorandum of points and authorities, challenged specific costs and the request for expert witness fees. Watts argued the 998 offer was not reasonable or made in good faith. In opposition, the Milbers argued the second motion was untimely and, as a result, Watts waived his right to object to the costs or expert witness fees.

They also argued the 998 offer was reasonable, and that Watts failed to demonstrate otherwise. The Milbers claimed their return of the annuities nullified the prospect of Watts recovering damages at trial.

Following a hearing, the trial court determined Watts's "placeholder" motion—which lacked any supporting arguments, legal authority, or evidence—did not preserve his specific objections to the claimed costs. The court denied the motion to strike costs "to the extent it is based on challenges to individual line items raised for the first time" in the motion and supporting documentation filed after the stipulated deadline. But the court reached a different result regarding the expert witness fees. It determined Watts's "timely filed motion . . . sufficiently preserved the ability to ask the court to exercise its discretion [on Code of Civil Procedure section 998 expert witness costs], even if the court disregards the late filed papers." The court granted the motion to strike the Milbers's expert witness fees, concluding the "offer of $75,000 was not reasonable, and not reasonably likely to be accepted, given the circumstances of the case." The Milbers appeal.

## DISCUSSION

In the first appeal, Watts argues the trial court erred by denying his request for attorney fees. In the second appeal, the Milbers argue the court abused its discretion by denying their request for expert witness fees. We address each argument in turn.

I.     *Watts's Failure to Establish Liability for Financial Elder Abuse Precludes an Award of Attorney Fees*

Watts contends he is entitled to attorney fees for financial elder abuse pursuant to the Elder Abuse and Dependent Adult Civil Protection Act (Elder Abuse Act), section 15600 et seq. We review de novo the trial court's order denying attorney fees. (*Arace v. Medico Investments, LLC* (2020) 48 Cal.App.5th 977, 983 (*Arace*).)

7

Section 15657.5, subdivision (a) provides, "Where it is proven by a preponderance of the evidence *that a defendant is liable for financial abuse, as defined in Section 15610.30,* . . . the court shall award to the plaintiff reasonable attorney's fees and costs."[5]  (Italics added.)  This language is clear and unambiguous.  (*Perlin v. Fountain View Management, Inc.* (2008) 163 Cal.App.4th 657, 664 [concluding a parallel provision of the Elder Abuse Act is "clear and unambiguous"].)  Watts acknowledged—both during oral argument and in the proceedings below—that we are presented with a "legislatively-designed tort."  Thus, as with torts generally, Watts had to allege and prove not only the existence of a duty and its breach, but also injury and causation in order to establish the Milbers were liable.  (*Ibid.* [concluding causation is an element of liability under the Elder Abuse Act]; *Berkley v. Dowds* (2007) 152 Cal.App.4th 518, 529 [concluding injury required for liability under the Elder Abuse Act].)

That injury and causation are necessary to establish liability and thereby recover attorney fees is supported by Judicial Council of California Civil Jury Instructions (ed. 2014) CACI No. 3100, entitled "Financial Abuse— Essential Factual Elements (Welf. & Inst. Code, § 15610.30)."  CACI No. 3100 provides that to establish a claim of financial abuse under the Elder Abuse Act, the plaintiff "must prove that all of the following are more likely to be true than not true:  [¶] . . . [¶]  . . . That [the plaintiff] was harmed; and [¶] . . . That [the defendant's] conduct was a substantial factor in causing [the

_____

[5] Section 15610.30, in turn, provides that " '[f]inancial abuse' of an elder or dependent adult occurs when a person or entity" "[t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both"; assists in the foregoing wrongful conduct; or commits, or assists in the committing of, the wrongful conduct by undue influence.  (*Id*. at subd. (a)(1)–(3).)

8

plaintiff] harm."[6] That instruction is consistent with a basic principle of tort law: liability for wrongful conduct requires proof of harm or injury and causation. (*Whiteley v. Philip Morris Inc.* (2004) 117 Cal.App.4th 635, 696 [" 'Defendants are not liable unless their conduct . . . was a "legal cause" of plaintiff's injury.' "]; *Brookhouser v. State of California* (1992) 10 Cal.App.4th 1665, 1677 ["It is axiomatic that a defendant cannot be held liable in tort for an injury he or she did not cause."].)

Other courts have reached similar conclusions when construing section 15657.5 and related provisions of the Elder Abuse Act. In *Perlin v. Fountain View Management, Inc.*, *supra*, 163 Cal.App.4th at pages 660 and 662, for example, the court considered whether the plaintiffs were entitled to attorney fees under section 15657, which mandates an award of fees "[w]here it is proven . . . that a defendant is liable for physical abuse . . . [or] neglect . . . ." The court concluded the plaintiffs were not entitled to fees because they had failed to establish causation, and "causation is an element of liability." (*Perlin*, at p. 660.) In *Berkley v. Dowds*, *supra*, 152 Cal.App.4th at pages 529 to 530, the court reviewed the grant of a demurrer to the plaintiffs' elder abuse cause of action. The court sustained the demurrer, concluding that the plaintiffs had failed to allege harm or causation, and such failure was fatal to the cause of action. (*Ibid.*)

Watts relies on *Arace*, *supra*, 48 Cal.App.5th 977, but that decision is consistent with our interpretation. The special verdict form in that case

---

[6] We cannot determine whether the jury received an instruction based on CACI No. 3100 because Watts's appendix does not contain a copy of the complete set of jury instructions. But the instructions that are in the record are based on the Judicial Council of California Civil Jury Instructions, and the special verdict form indicates the jury was asked to make findings that correspond to the five elements of a claim for financial abuse as outlined in CACI No. 3100.

9

indicated the jury found in favor of the plaintiff on her claims for financial elder abuse and neglect.  (*Id.* at p. 981.)  The jury awarded economic damages on the neglect cause of action, but no damages for the financial abuse.  (*Ibid.*)  The trial court awarded attorney fees to the plaintiff under section 15657.5.  (*Arace*, at pp. 981–982.)  Citing the jury's decision not to award damages for financial abuse, the defendant appealed the award of attorney fees.  (*Id.* at p. 981.)  The Court of Appeal affirmed, noting that the jury found the defendant had committed financial abuse and that the plaintiff suffered harm as a result of the defendant's conduct.  (*Id.* at pp. 982–983.)  As the court explained, the jury's decision not to award damages on the financial abuse cause of action was likely a consequence of it being instructed that it could award damages " 'only once, regardless of the number of legal theories alleged.' "  (*Id.* at p. 983, fn. 4.)  In any event, *Arace* supports the proposition that an award of damages is not necessary to establish liability, but proving harm and causation are.

As the trial court concluded below, the jury's finding that Watts did not suffer harm is not surprising given his tactical decisions.  The only harm alleged in the operative complaint concerned the taking, secreting, appropriating, obtaining, or retaining of Watts's property, and Watts only sought economic damages as measured by the value of the annuities.  Because the annuities were returned more than a year before trial, and no other injury was alleged nor other form of damages sought, the jury found Watts did not prove any harm and it awarded no damages.  The trial court correctly concluded that, having failed to prove harm or causation, Watts did not establish that the Milbers were liable for financial abuse and he therefore was not entitled to attorney fees under section 15657.5.

10

Of course, Watts theoretically could have alleged and potentially proven harm based on something other than the value of the annuities. Had he, for example, alleged and proven that the Milbers's conduct caused him pain and suffering or some other harm, the outcome of his request for attorney fees likely would have been different, as counsel for the Milbers acknowledged at oral argument. But, to paraphrase the Milbers's counsel, that is not the case we have before us. Having failed to prove that Watts was harmed by the Milbers's conduct, Watts failed to establish liability for financial abuse, and he is not entitled to attorney fees pursuant to section 15657.5, subdivision (a).

II.     *No Abuse of Discretion in Denying Expert Witness Fees*

In the second appeal, the Milbers challenge the denial of their request for expert witness fees. We affirm.

Under Code of Civil Procedure section 998, a party in a civil suit may serve a settlement offer before commencement of trial. If a defendant's offer is not accepted and the plaintiff does not obtain a more favorable judgment or award, the plaintiff must pay the defendant's costs from the time of the offer. (Code Civ. Proc., § 998, subd. (c)(1).) In addition, the trial court has discretion to award "costs of the services of expert witnesses." (*Ibid.*)

To be entitled to these costs, the 998 offer must be reasonable and made in good faith. (*Adams v. Ford Motor Co.* (2011) 199 Cal.App.4th 1475, 1483 (*Adams*).) " ' "Where . . . the offeror obtains a judgment more favorable than its offer, the judgment constitutes prima facie evidence showing the offer was reasonable." ' " (*Id.* at p. 1484.) Good faith means the settlement offer must " 'carry with it some reasonable prospect of acceptance.' " (*Id.* at p. 1483.) "Whether a [Code of Civil Procedure] section 998 offer was reasonable and made in good faith is left to 'the sound discretion of the trial

11

court.' " (*Id.* at p. 1484.) Similarly, the decision to award expert witness fees is "left to the discretion of the trial court." (*Ibid.*) The trial court, " 'having heard the entire case and [having] observed the demeanor of witnesses,' " is generally in the best position to make such decisions. (*Ibid.*)

"An appellate court may reverse the trial court's determination only if the court finds that in light of all the evidence viewed most favorably in support of the trial court, no judge could have reasonably reached a similar result." (*Adams, supra,* 199 Cal.App.4th at p. 1484.) "Such a discretionary ruling will not be disturbed on appeal absent a showing that discretion was exercised in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." (*Najera v. Huerta* (2011) 191 Cal.App.4th 872, 877.) " ' " ' "[U]nless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power." ' " ' " (*Essex Ins. Co. v. Heck* (2010) 186 Cal.App.4th 1513, 1529.)

First, we consider the Milbers's argument that Watts waived his right to object to the request for expert witness fees by failing to file a timely motion to strike or tax costs. "As a general rule, doubtful cases will be decided against the existence of a waiver." (*Ringler Associates Inc. v. Maryland Casualty Co.* (2000) 80 Cal.App.4th 1165, 1188.) Moreover, the Milbers's request for expert witness fees is based on Code of Civil Procedure section 998, subdivision (c)(1), which provides the court has discretion to award the defendant such costs. As a result of Watts's "placeholder" motion, the trial court and the Milbers were aware he intended to challenge costs. An award of expert witness fees required a decision by the trial court, exercising its discretion. (*Anthony v. City of Los Angeles* (2008) 166 Cal.App.4th 1011, 1016.) While we do not condone Watts's lack of diligence, we conclude his

12

failure to file a complete motion before the stipulated deadline did not waive the issue or otherwise preclude the trial court from addressing the Milbers's claimed "right to recover expert witness fees."

Second, on the merits, we find no abuse of discretion in the trial court's denial of the Milbers's request. The jury's verdict, which resulted in a judgment against Watts, is prima facie evidence that the 998 offer, made in December 2018, was reasonable. (*Adams*, *supra*, 199 Cal.App.4th at p. 1484.) Nevertheless, in February 2018, the probate court voided the Gold Lake Trust and ruled that Diane's designation of her son as the beneficiary of the trust was "presumed to be a product of fraud or undue influence." And about two months later, in April 2018, when ruling on the Milbers's motion for summary judgment, the trial court elected to treat the motion as one for judgment on the pleadings, and it granted the motion with leave to amend the complaint, finding Watts "may be able to amend the complaint to allege facts stating legally sufficient claims." When the 998 offer was made in December 2018, the case had been pending for almost two years, giving rise to a reasonable inference that the plaintiff had incurred "substantial costs." Based on the prospect of recovering enhanced remedies under the Elder Abuse Act, including attorney fees and punitive damages, there was no abuse of discretion in the trial court's finding that the offer was not reasonable or reasonably likely to be accepted by Watts. (*Pineda v. Los Angeles Turf Club, Inc.* (1980) 112 Cal.App.3d 53, 63–64 [no abuse of discretion in denial of request for expert witness fees given finding that offer was not reasonable].)

In arguing otherwise, the Milbers claim, based on the jury's verdict, that the burden shifted to Watts "to prove the offer was made in 'bad faith.'" The cases cited by the Milbers do not support this claim. Watts was required to overcome the prima facie evidence that the offer was reasonable, which

does not necessarily entail showing the offer was made in bad faith. And, of course, on appeal, "the burden is on the party complaining to establish an abuse of discretion." (*Najera v. Huerta*, *supra*, 191 Cal.App.4th at p. 877.) The Milbers next argue the trial court erred by relying on the probate court order that voided the Gold Lake Trust because the jury was instructed that it had no effect on liability or damages. In support of this argument, the Milbers rely on what appears to be a draft of a trial exhibit. Based on this document alone, we cannot determine how it was used at trial, nor does it shed any light on how the parties may have viewed their trial prospects in December 2018, about five months before trial.[7] Furthermore, we cannot conclude the probate court order had no relationship to the issues decided at trial given the jury's finding that Diane was liable for fraud and undue influence as a result of the trust's donative transfer to Diane's son.

Finally, the Milbers's claim, again without citing to the record, that when they made their 998 offer, they "predicted and understood" that Watts's theory of damages based on the value of the annuities would be unsuccessful. It is true that the annuities were returned to Watts in February 2018, about ten months before the 998 offer. But the Milbers point to nothing in the record to support their suggestion that they or anyone else understood, at the time of the offer, that Watts's only theory of damages at trial would be based on the value of the annuities. Here, the trial court found that, at the time the

---

[7] A similar problem applies regarding the Milbers's challenge to the trial court's reliance on its denial of the Milbers's motions for nonsuit and a directed verdict. We cannot evaluate this argument because the Milbers provide no citation to where we can locate the relevant documents or orders in the record. Indeed, the record does not even appear to contain the first amended complaint, which would have been the operative one at the time of the 998 offer. (*Jones v. Dumrichob* (1998) 63 Cal.App.4th 1258, 1264 [failure to provide an adequate record on appeal "leaves this court with no evidence upon which to base a finding that the trial court abused its discretion"].)

offer was made, it was reasonable for Watts "to believe he would likely recover a much greater amount than the 998 offer represented, or for [Watts] to view the offer as a disproportionately low amount in comparison to [the Milbers's] potential exposure, which included the possibility of punitive damages." Based on the record before us, and considering the many legitimate factors taken into account by the trial judge in rendering her decision, we cannot say that "no judge could have reasonably reached a similar result." (*Adams*, *supra*, 199 Cal.App.4th at p. 1484.) The Milbers fail to show an abuse of discretion.

DISPOSITION

We affirm. Each side shall bear its own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

_____
Rodriguez, J.*

WE CONCUR:


_____
Simons, Acting P. J.


_____
Needham, J.


A159167 & A160788

---

* Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.