[No. B225791. Second Dist., Div. One. Sept. 29, 2011.]

BILLIE JEAN ADAMS et al., Plaintiffs and Appellants, v. FORD MOTOR COMPANY, Defendant and Respondent.

1476

**COUNSEL**

Girardi & Keese, John A. Girardi; Brayton Purcell and James P. Nevin, Jr., for Plaintiffs and Appellants.

Nixon Peabody, James J. Ostertag; Yukevich, Calfo & Cavanaugh, James J. Yukevich, Steven D. Smelser, Charles G. Kabele and Linet Bidrossian for Defendant and Respondent.

## OPINION

JOHNSON, J.—Appellants Billie Jean Adams and her three children (Adams) brought suit for general and special damages against respondent Ford Motor Company (Ford) following the death of their husband and father, Richard Adams. A few days before trial, Ford made a settlement offer under Code of Civil Procedure section 998 (section 998) in the amount of $2,500 per plaintiff, totaling $10,000.[1] Ford's section 998 offer also included a mutual waiver of costs. Adams rejected the offer and the parties proceeded to trial. In December 2009, the jury returned a verdict in favor of Ford.

In February 2010, Ford filed a memorandum of costs, seeking to recover expenses totaling $185,741.82, including $167,570 in expert witness fees, pursuant to section 998, subdivision (c). Adams filed a motion to tax costs, arguing that Ford's section 998 settlement offer was unreasonable and made in bad faith, and that Ford's expert witness fees were not reasonably necessary for Ford's preparation of trial. The trial court denied Adams's motion, finding that Ford's settlement offer was reasonable, and that Ford's expert witness fees were reasonably necessary for Ford's defense at trial.

Adams contends that the trial court abused its discretion in denying the motion. We disagree, and accordingly, we affirm.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Decedent Richard Adams was a "shade tree mechanic"[2] who, throughout his life, conducted routine maintenance on all of his used vehicles, five of which were manufactured by Ford. Following the death of Mr. Adams from mesothelioma, a form of cancer associated with exposure to asbestos, his wife, Billie Jean Adams, and their three children brought suit against numerous defendants, including Ford Motor Company, alleging that the defendants' actions and products caused the decedent to become exposed to asbestos.[3] Specifically, with regard to Ford and other automobile manufacturers, the complaint alleged that the decedent was exposed to high levels of asbestos dust while replacing brake pads on his vehicles, including vehicles

---

[1] All further section references are to the Code of Civil Procedure unless otherwise indicated.

[2] A shade tree mechanic is someone who maintains and repairs his vehicles himself.

[3] Richard Adams was the original plaintiff in this action. Following his death, his wife, Billie Jean Adams, individually and on behalf of Richard Adams's estate, and their three children, Bryan Christopher Adams, Michael Eric Adams, and Jennifer Rene Hilty, as heirs, succeeded him as plaintiffs.

manufactured by Ford.[4] The complaint also named defendants in the construction trade (construction defendants), and alleged that the decedent's illness was also caused by his exposure to asbestos while working in construction. Adams sought $150,000 in medical expenses, $1 million in loss of earnings and $1 million in general damages.

By November 2009, four years into the litigation, Adams's claims against most of the defendants had been settled or dismissed, with the exception of the claim against Ford. Adams had settled with construction defendants Union Carbide and La Habra respectively for $20,000 and $7,500. Adams had also settled with automobile manufacturers Isuzu and Nissan, respectively for $50,000 and $2,000, as well as with brake manufacturer Honeywell for $4,750. Another automobile manufacturer, Volkswagen, successfully filed a motion for summary judgment in 2008, and was dismissed from the case. Finally, Adams had secured larger settlements with automobile service companies Pep Boys and AutoZone, in the amount of $70,000 and $25,000 respectively. The record is silent with regard to Adams's claims against the remaining defendants.

On November 25, 2009, Ford served Adams with a timely section 998 offer to settle the case for $2,500 per plaintiff, totaling $10,000. Ford's section 998 offer also included a mutual waiver of costs. Adams allowed the offer to expire and the parties proceeded to trial. On December 21, 2009, the jury returned a verdict in favor of Ford, finding that it did not manufacture, sell or distribute the brakes that Adams claimed had caused the decedent's illness.

Following trial, Ford filed a memorandum of costs reflecting total claimed costs of $185,741.82, which included expert witness fees of $167,570. Subsequently, Adams filed a timely motion to tax costs, solely challenging the propriety of Ford's claim for expert witness fees. Adams's motion alleged that Ford's section 998 offer was unreasonable and made in bad faith, and that Ford's expert witness costs were not reasonably necessary for the preparation of trial.

Specifically, Adams's motion claimed that Ford's section 998 offer was a "token offer," made in bad faith with no reasonable expectation that Adams would accept it. Adams further alleged that, in light of the important amount of costs and damages sought by the complaint, Ford's $10,000 offer could not

---

[4] These types of asbestos exposure claims are commonly referred to as "automotive friction" cases.

carry any reasonable prospect of acceptance, and was therefore made with the sole purpose of recovering expert witness fees should Ford prevail at trial. Adams also argued that based on the evidence available to both parties at the time of the offer, a reasonable possibility existed that Adams would prevail at trial, and, therefore, Ford's $10,000 offer did not constitute a reasonable prediction of Ford's potential liability. Finally, Adams alleged that, even in the event that Ford's offer was found to be reasonable, Ford was only entitled to postoffer expert witness costs under section 998, subdivision (d). Based on these allegations, Adams demanded that the trial court strike Ford's memorandum of costs.

On April 15, 2010, the trial court held the first of two hearings on Adams's motion. At the hearing, the court expressed its "tentative thinking" on the motion and stated, "Ford is the prevailing party," and "the settlement amount offer, given that it included a substantial waiver of costs, was reasonable." The trial court also indicated that without information about the settlements Adams had entered into with the other defendants, it would be difficult for the court to question the reasonableness of Ford's section 998 offer, given that Ford had secured a defense verdict at trial. Moreover, in response to Adams's argument that Ford's section 998 offer was unreasonable in light of the "enormous" costs and damages sought by Adams, the trial court stated that Adams's evidence against Ford at trial was "pretty attenuated," and it "was not surprised at all by the jury's verdict." The court further noted that in "automotive friction" cases, causation is often very hard to establish. Consequently, the court opined, Adams had to evaluate Ford's section 998 offer in the context of their limited chance of succeeding at trial.

Regarding the reasonableness of the expert witness fees incurred by Ford, the court expressed some concern with the "extraordinary amount" of the fees, but recalled that expert testimony was "very critical . . . for Ford in this case." The court ultimately decided to order supplemental briefing on the reasonableness of the expert fees. Specifically, the court ordered Ford to present additional evidence about its expert fees, and to provide the court with a "yardstick" against which to measure these fees.

Finally, the trial court rejected Adams's argument that Ford was only entitled to postoffer costs under section 998, subdivision (d), since Ford was a prevailing *defendant* and could therefore recover, at the court's discretion, the costs of expert witness fees, whether incurred before or after the settlement offer under section 998, subdivision (c).

On June 15, 2010, the trial court held a second hearing on Adams's motion to tax costs. In its supplemental briefing, Ford presented additional evidence

regarding the expert witness fees it had incurred in preparation of trial. Specifically, Ford presented evidence of comparable expert witness fees it had incurred in other products liability cases, most of which amounted to similar or higher costs than those awarded in the present case.[5] Ford also provided the court with evidence that Adams's experts charged similar hourly rates as Ford's experts. Additionally, Ford presented evidence of several defense verdicts in "automotive friction" cases against other automobile manufacturers, all of which required the work and testimony of expert witnesses similar to those used by Ford throughout the litigation with Adams.[6] Finally, Ford provided the court with a declaration of its lead trial counsel, James J. Ostertag, who asserted, based on his experience litigating several other "automotive friction" cases, that the fees listed in Ford's memorandum were typical, reasonable and necessary for Ford's defense at trial.

Adams also presented additional evidence, most of which detailed the settlements Adams had entered into with other defendants named in the original complaint. As mentioned above, the settlements ranged from $2,000 for defendant Nissan to $70,000 for defendant Pep Boys.[7] As Adams claimed that section 998, subdivision (d) only allowed Ford to recover expert fees incurred after Adams had refused Ford's settlement offer, Adams also argued that Ford's expert witness fees were unreasonable in light of the limited amount of time that elapsed between the offer and the end of trial. Finally, Adams alleged that the itemization of the expert fees in Ford's memorandum was "woefully inadequate," since it simply provided for each expert a total amount of hours spent on the case, but failed to explain how these hours were spent, and what work was devoted to any specific task.

On the basis of Adams's prior settlements, the trial court concluded that Ford's $10,000 offer was not "out of the ballpark," and was therefore reasonable, particularly since it included a waiver of costs. The court noted that Ford's $10,000 offer was not unrealistic, and that Adams had to evaluate it not merely as an offer for $10,000, but as an offer for $10,000 and the

---

[5] Ford presented evidence that it had incurred and been awarded expert fees in other products liability cases for amounts ranging from $432,968.03 to $645,996.38. Ford also presented evidence of a recent judgment in a similar "automotive friction" case in which it was awarded $106,000 in costs to recover expert fees.

[6] Specifically, Ford presented evidence of three verdicts in favor of automobile manufacturer Chrysler, LLC, in "automotive friction" cases where Chrysler's lead counsel was also James J. Ostertag, Ford's counsel here and at trial.

[7] The record on appeal is silent as to whether any of these settlements included a waiver of costs.

opportunity to "avoid the possibility of exactly where we are today, which is looking down the gun barrel of $167,000 in expert fees and . . . costs." Stating that, "[t]he experts were very powerful at trial[] [and that] . . . the money was well spent," the trial court also concluded that Ford's expert witness fees were reasonable and necessary for the preparation of trial.

The trial court denied Adams's motion; it ruled that Ford's section 998 offer was valid, and that the expert witness costs listed in Ford's memorandum were reasonably necessary in light of the experts' importance at trial. Adams filed this appeal.

## DISCUSSION

### I. Standard of Review

In reviewing a trial court's award of costs pursuant to section 998, the appropriate standard of review is abuse of discretion. (*Najera v. Huerta* (2011) 191 Cal.App.4th 872, 877 [119 Cal.Rptr.3d 714].) The party appealing the trial court's decision to award costs bears the burden " 'to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power.' [Citations.]" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193].) To meet its burden, a complaining party must therefore show that the trial court exercised its discretion in an "arbitrary, capricious or patently absurd manner." (*Najera*, at p. 877.)

### II. Applicable Law

██ Section 998 allows for any party in a civil suit to serve a settlement offer to any other party before the commencement of trial.[8] Section 998, subdivision (c)(1) provides that "[i]f an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover his or her postoffer costs and shall pay the defendant's costs from the time of the offer. In addition, . . . the court or arbitrator, in its discretion, may require the plaintiff to pay a reasonable sum

---

[8] Section 998, subdivision (b) states, in relevant part, "[n]ot less than 10 days prior to commencement of trial . . . , any party may serve an offer in writing upon any other party to the action to allow judgment to be taken or an award to be entered in accordance with the terms and conditions stated at that time."

to cover costs of the services of expert witnesses . . . actually incurred and reasonably necessary in . . . preparation for trial or arbitration . . . of the case by the defendant."[9]

■ The purpose of section 998 is to encourage the settlement of litigation without trial.[10] In *Wear v. Calderon* (1981) 121 Cal.App.3d 818, 821 [175 Cal.Rptr. 566], this court held that a good faith requirement must be read into section 998 in order to effectuate the purpose of the statute. Good faith in turn requires that the settlement offer be "realistically reasonable under the circumstances of the particular case." (*Wear*, at p. 821.) The offer must therefore "carry with it some reasonable prospect of acceptance. [Citation.]" (*Elrod v. Oregon Cummins Diesel, Inc.* (1987) 195 Cal.App.3d 692, 698 [241 Cal.Rptr. 108] (*Elrod*).) On one hand, a party having no expectation that his offer will be accepted "will not be allowed to benefit from a no-risk offer made for the sole purpose of later recovering large expert witness fees." (*Jones v. Dumrichob* (1998) 63 Cal.App.4th 1258, 1263 [74 Cal.Rptr.2d 607] (*Jones*), citing *Pineda v. Los Angeles Turf Club, Inc.* (1980) 112 Cal.App.3d 53, 63 [169 Cal.Rptr. 66].) On the other hand, section 998 punishes a party who refuses a reasonable settlement offer, and subsequently fails to receive a more favorable judgment at trial. (*Elrod*, at p. 699.)

■ A prevailing party who has made a reasonable and good faith pretrial offer pursuant to section 998 is entitled to specified costs, and may be awarded a reasonable sum to cover the costs of the services of expert witnesses. (*Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 134 [84 Cal.Rptr.2d 753]; *Huber, Hunt & Nichols, Inc. v. Moore* (1977) 67 Cal.App.3d 278, 315 [136 Cal.Rptr. 603] (*Moore*).) Moreover, even though section 998, subdivision (d) limits a plaintiff's ability to recover expert witness fees to those incurred after the settlement offer was refused, section 998, subdivision (c) contains no such limitation, and gives the trial court discretion to award a prevailing defendant the costs of expert witnesses whether incurred before or after the settlement offer. (*Regency Outdoor Advertising, Inc. v. City of Los Angeles* (2006) 39 Cal.4th 507, 532–533 [46 Cal.Rptr.3d 742, 139 P.3d 119] (*Regency Outdoor Advertising*).)

---

[9] Section 998, subdivision (h) reads, "[t]he costs for services of expert witnesses for trial under subdivisions (c) and (d) shall not exceed those specified in Section 68092.5 of the Government Code." In turn, Government Code section 68092.5, subdivision (a) states, in relevant part, "[a] party requiring testimony before any court, tribunal, or arbiter in any civil action or proceeding from any expert witness . . . shall pay the reasonable and customary hourly or daily fee for the actual time consumed in the examination of that witness by any party attending the action or proceeding."

[10] At oral argument, appellants seemed to advocate a new requirement that a section 998 offer reflect an estimate of the future costs to offeror if the case goes to trial. We decline to impose that meaning on the clear language of the statute.

Whether a section 998 offer was reasonable and made in good faith is left to "the sound discretion of the trial court." (*Elrod, supra*, 195 Cal.App.3d at p. 700.) Similarly, the decision to award expert witness fees, and the determination of whether these fees were reasonably necessary, are issues left to the discretion of the trial court. (*Moore, supra*, 67 Cal.App.3d at p. 315.) As the court in *Moore* stated, "the trial court was in a far better position, having heard the entire case and observed the demeanor of witnesses, to exercise this discretion and determine what was a reasonable amount and what was reasonably necessary." (*Ibid.*) An appellate court may reverse the trial court's determination only if the court finds that in light of all the evidence viewed most favorably in support of the trial court, no judge could have reasonably reached a similar result. (*Marsh v. Mountain Zephyr, Inc.* (1996) 43 Cal.App.4th 289, 304 [50 Cal.Rptr.2d 493].)

## III. *Adams's Motion to Tax Costs*

■ We conclude that the trial court did not abuse its discretion in denying Adams's motion to tax costs. The trial court conducted two hearings on the motion, and determined that Ford's section 998 offer was reasonable, and that the expert witness fees listed in Ford's memorandum of costs were reasonably necessary for Ford's defense at trial.

### A. *Reasonableness of Ford's Section 998 Offer.*

■ " 'Where . . . the offeror obtains a judgment more favorable than its offer, the judgment constitutes prima facie evidence showing the offer was reasonable and the offeror is eligible for costs as specified in section 998.' " (*Santantonio v. Westinghouse Broadcasting Co.* (1994) 25 Cal.App.4th 102, 117 [30 Cal.Rptr.2d 486] (*Santantonio*).) In *Santantonio*, the court held that the defendants' section 998 offer for $100,000 was prima facie reasonable in light of the fact that the defendants had secured a verdict of no liability at trial, despite the fact that the plaintiff sought to recover $900,000 in damages. (25 Cal.App.4th at pp. 117–118.) The burden was therefore on the plaintiff to show that the trial court had abused its discretion in concluding that the defendants' offer was reasonable. (*Id.* at p. 117.)

Here, the trial court properly noted that the fact that Ford secured a defense verdict at trial strongly undermined Adams's claim that Ford's $10,000 settlement offer was unreasonable. As the court stated, "$10,000, once you've won the case, looks like you're overpaying." The burden was therefore on Adams to prove that the trial court abused its discretion in finding that Ford's section 998 offer was reasonable.

■ Further, a reasonable section 998 settlement offer is one that "represents a reasonable prediction of the amount of money, if any, [the offeror] would have to pay [the offeree] following a trial, discounted by an appropriate factor for receipt of money by [the offeree] before trial." (*Elrod, supra*, 195 Cal.App.3d at p. 699.) The reasonableness of a defendant's section 998 settlement offer is evaluated in light of "what the offeree knows or does not know at the time the offer is made," along with what the offeror knew or should have known about facts bearing on the offer's reasonableness. (*Santantonio, supra*, 25 Cal.App.4th at p. 119.) In other words, for a section 998 offer to be reasonable, the defendant must reasonably believe that the plaintiff might accept his offer, and the plaintiff must have access to the facts that influenced the defendant's determination that the offer was reasonable.

In *Santantonio*, the defendants' settlement offer was reasonable because the defendants had substantial evidence undermining the plaintiff's claim that his employment was terminated because of his age, and the plaintiff himself knew about that evidence and nevertheless chose to proceed to trial. (*Santantonio, supra*, 25 Cal.App.4th at p. 120.)

By contrast, in *Elrod*, a $15,001 offer by one of several defendants in a case where the plaintiff's damages were ultimately found to be in excess of $1 million was held to be unreasonable by the trial court, and that determination was upheld by the Court of Appeal. (*Elrod, supra*, 195 Cal.App.3d at pp. 700–701.) In *Elrod*, the defendant was found to be liable for damages largely superior to his $15,001 settlement offer, but fortuitously avoided paying anything because other settlements received by the plaintiff reduced the amount of his contribution to zero. (*Ibid.*) In view of these facts, the Court of Appeal found that the trial court did not abuse its discretion in concluding that the defendant's offer was "not a reasonable prediction of the amount [defendant] would have to pay plaintiff following a trial," and therefore was not a valid offer under section 998. (195 Cal.App.3d at p. 700.)

■ Finally, a section 998 offer has value beyond the monetary award provided if it also includes a waiver of costs. In *Jones*, the court concluded that a defendant's section 998 offer allowing judgment to be entered against him in return for a waiver of costs was reasonable even though it included no monetary award, since the offer "carried a significant value to appellants because, if accepted, it would have eliminated appellants' exposure to the very costs which are the subject of this appeal." (*Jones, supra*, 63 Cal.App.4th at p. 1264.)

Here, Adams contends that in light of the hundreds of thousands of dollars in costs, and $2 million in damages she sought, Ford's $10,000 offer was unreasonable. However, Ford's offer could not be evaluated simply in

comparison to the judgment Adams sought, but it should have been measured in light of the likelihood that Adams would prevail at trial. Ford's offer also included a mutual waiver of costs, and, as the trial court properly noted, such provision substantially increased the settlement's potential value in the event that Adams failed to secure a more favorable judgment against Ford.

At the first hearing on Adams's motion, the court properly noted that "automotive friction" cases are often very hard to prove, and that evidence of Ford's liability at trial was "pretty attenuated." Furthermore, at the time of Ford's settlement offer, the parties had long been engaged in discovery, and Adams reasonably should have known that her chances of prevailing at trial were slim.[11] More importantly, by 2009, Adams had entered into numerous settlements with other defendants, for amounts significantly lower than the damages sought in the original complaint, ranging from $2,000 to $70,000. Specifically, Adams had settled with automobile defendants Nissan and Isuzu respectively for $2,000 and $50,000. While Ford's offer was five times lower than Isuzu's, it was also five times greater than Nissan's; thus, the trial court could reasonably conclude that Ford's offer was not "out of the ballpark."

Much like the plaintiff in *Santantonio, supra*, 25 Cal.App.4th 102, Adams knew or should have known that her chances of prevailing at trial were slim, and should have therefore evaluated Ford's section 998 offer in light of that reasonable probability. Moreover, like the defendant's offer in *Jones, supra*, 63 Cal.App.4th 1258, Ford's section 998 offer had significant value for Adams beyond the $10,000 monetary award, as it included a waiver of costs that would have protected Adams from exposure to the costs which are the very reason for this appeal.

In view of the foregoing facts, the trial court could reasonably conclude that Ford's section 998 offer was reasonable and made in good faith, and Adams has failed to demonstrate that the trial court abused its discretion in doing so. Having presided over the trial, the trial judge was in the best position to evaluate the respective strength of Adams's claim and of Ford's defense, and as such, was also in the best position to evaluate the reasonableness of Ford's section 998 offer.

### B. *Reasonableness of the Expert Fees Incurred by Ford.*

█ A "verified memorandum of costs is prima facie evidence of [the] propriety" of the items listed on it, and the burden is on the party challenging these costs to demonstrate that they were not reasonable or necessary. (*Jones,*

---

[11] For instance, in 2008, the trial court dismissed Adams's similar claim against Volkswagen, one of the other defendants named in the original complaint.

*supra,* 63 Cal.App.4th at p. 1266.) The court in *Jones,* quoting *Rappenecker v. Sea-Land Service, Inc.* (1979) 93 Cal.App.3d 256, 266 [155 Cal.Rptr. 516], found that the plaintiff's " 'mere statements in the points and authorities accompanying its notice of motion to strike cost bill and the declaration of its counsel' " did not suffice to rebut the defendant's prima facie showing that its expert costs were reasonable and necessarily incurred. (*Jones,* at p. 1266.)

Whether an item listed on the memorandum was reasonably necessary is a question of fact to be decided by the trial court. (*Ladas v. California State Auto. Assn.* (1993) 19 Cal.App.4th 761, 774 [23 Cal.Rptr.2d 810].) As mentioned above, the trial court, having heard the entire case, is in the best position to evaluate the importance of expert witnesses at trial, and therefore is in the best position to evaluate the reasonableness of the expert witness fees listed in the memorandum of costs. (*Moore, supra,* 67 Cal.App.3d at p. 315.) In *Moore,* the Court of Appeal found no abuse of discretion on the part of the trial court in deciding to grant the defendants' motion to tax costs, because the trial court had the opportunity to observe the expert witnesses at trial, and rationally concluded that some of their services were not reasonably necessary for the plaintiff's case at trial. (*Ibid.*)

Here, Adams's only contention regarding the expert fees listed in Ford's memorandum is that they are "exorbitant," and thus unreasonable. Apart from the allegations contained in her own pleadings, Adams has failed to make any showing indicating that the expert fees listed in Ford's memorandum were unreasonable or unnecessary for trial. In light of the fact that Ford's verified memorandum of costs constitutes prima facie evidence that the listed expert witness fees were reasonable, Adams has failed to carry her burden of showing that the fees were improper and unnecessary.

Moreover, in her reply brief, Adams argues that section 998, subdivision (c) gives the trial court discretion to award Ford only those costs incurred after Adams had rejected the settlement offer, and that consequently, the expert witness fees listed by Ford in its memorandum are unreasonable in light of the limited amount of time that elapsed between Ford's section 998 offer and the jury's verdict at trial. Adams's argument stems from an erroneous reading of section 998, subdivision (c), which gives the trial court discretion to award a prevailing defendant *all* expert witness fees, whether incurred before or after the settlement offer was made.[12] (*Regency Outdoor Advertising, supra,*

---

[12] Section 998, subdivision (d) by its language, however, limits the amount of expert witness fees that a prevailing *plaintiff* can recover to those fees incurred after the settlement offer was rejected.

39 Cal.4th at pp. 532–533.) Adams's claim that Ford's expert witness costs were unreasonable based upon the limited time that elapsed between the section 998 offer and the end of trial is therefore without merit.[13] (39 Cal.4th at pp. 532–533.)

Finally, the record established that the trial court thoroughly evaluated the reasonableness of the expert witness fees listed on Ford's memorandum. During the first hearing on Adams's motion to tax costs, the trial court expressed some concern with the "extraordinary amount" of fees, although it recalled that "the expert was a very critical witness for Ford in this case." The court therefore ordered Ford to file supplemental briefing to justify the amount of expert witness fees listed in its memorandum, and to provide the court with a yardstick against which it could measure them. Ford then provided further details about the expert fees it had incurred in the litigation with Adams, and also presented evidence of expert witness costs it had been awarded in other products liability cases. Ford also presented evidence that Adams's expert witnesses charged similar hourly rates as Ford's experts. On the basis of Ford's supplemental briefing, and because of the experts' importance at trial, the trial court concluded that the expert witness fees were reasonably necessary to Ford's defense at trial.

As in *Moore, supra,* 67 Cal.App.3d 278, the trial court, which had observed the expert witnesses at trial, and had the opportunity to evaluate the weight of their testimony, was in the best position to determine the reasonableness of the expert fees. It is manifest from the trial court's decision to hold a second hearing on the issue of the reasonableness of Ford's expert witness costs that it did not make that determination in an arbitrary or capricious manner.

The trial court properly concluded that the expert witness fees listed in Ford's memorandum of costs were reasonably necessary for the preparation of trial; it therefore correctly exercised its discretion to award these costs to Ford pursuant to section 998, subdivision (c). Adams has failed to show that the trial court abused its discretion in denying her motion to tax costs.

---

[13] Similarly, Adams claims that even in the event that Ford is entitled to recover some expert witness fees, it is only entitled to those fees incurred after Adams rejected the settlement offer pursuant to section 998, subdivision (c). This claim also lacks merit, and is based upon an incorrect reading of section 998, subdivision (c), which does not contain the limiting language of section 998, subdivision (d). To the extent that Adams is also challenging the trial court's ruling that Ford may recover all expert fees incurred in preparation of trial, we reject Adams's claim, and, accordingly, we affirm the trial court's decision.

## DISPOSITION

The judgment is affirmed. Respondent is to recover its costs on appeal.

Rothschild, Acting P. J., and Chaney, J., concurred.