Filed 2/17/26  Reyes-Gonzalez v. Color Marble CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| GUSTAVO REYES-GONZALEZ, | B350612 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 22STCV31907) |
| v. | |
| COLOR MARBLE INC., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, William F. Fahey, Judge.  Affirmed as modified.

Metzger Law Group, Raphael Metzger and Brian P. Barrow for Plaintiff and Appellant.

Yang Professional Law Corporation, Rey S. Yang and Johanna Boktor for Defendant and Respondent.

# INTRODUCTION

Gustavo Reyes-Gonzalez appeals from the trial court's order denying in part his motion to tax costs requested by Color Marble Inc. after the court entered judgment in favor of Color Marble. Reyes-Gonzalez argues that, because Color Marble's offer to compromise under Code of Civil Procedure section 998 was unreasonable and not in good faith, the trial court erred in awarding Color Marble more than $90,000 in expert fees.[1] He also argues that, even if the court did not err in awarding expert fees under section 998, the court erred in awarding fees for work one of the experts performed before Color Marble made its offer to compromise and in awarding the full amount of fees Color Marble requested. Reyes-Gonzalez also challenges, on a variety of grounds, the court's ruling on nearly every other category of costs the court awarded.

Some of Reyes-Gonzalez's arguments have merit. In particular, the trial court erred in failing to tax the following costs: $1,457.50 in expert witness fees; $289.45 in jury fees; $3,508.30 in deposition costs; $38,226.97 in court reporter fees; $26,678.10 for models, exhibits, and photocopies; and $7,418.95 for electronic filing and service. The rest of his arguments lack merit. We modify the court's order to correct the errors and affirm the order as modified.

---

[1] Statutory references are to the Code of Civil Procedure.

**FACTUAL AND PROCEDURAL BACKGROUND**

A.  *Reyes-Gonzalez Sues Manufacturers, Importers, and Distributors of Artificial Stone Products, Including Color Marble*

Reyes-Gonzalez filed this action against numerous manufacturers, importers, and distributors of natural and artificial stone products, including Color Marble, asserting causes of action for negligence, products liability (alleging failure-to-warn and design-defect claims), and fraudulent concealment. Reyes-Gonzalez alleged that from 2007 to 2022 he inhaled "significant amounts of silica, metals, and other toxic chemicals" while fabricating countertops made of natural and artificial stone products. Reyes-Gonzalez alleged that he developed silicosis; that he received "extensive medical treatments and hospitalizations, including a double lung transplant to save his life"; and that his exposure to respirable crystalline silica and other toxic hazards was a substantial factor in causing his lung disease. Reyes-Gonzalez alleged he worked with a range of artificial and natural stone products supplied by Color Marble.

B.	*The Jury Finds for Color Marble on Reyes-Gonzalez's Strict Liability Causes of Action, but for Reyes-Gonzalez on His Negligence Cause of Action, and the Trial Court Grants Color Marble's Motion for Judgment Notwithstanding the Verdict*

The case proceeded to a jury trial against Color Marble and two other defendants in June and July 2024.[2]  The jury returned a verdict in favor of Color Marble on Reyes-Gonzalez's two products liability causes of action and in favor of Reyes-Gonzalez on his negligence cause of action.  The jury awarded Reyes-Gonzalez more than $50 million in economic and non-economic damages and found Color Marble was liable for 2.5 percent of that amount.

Color Marble filed a motion for judgment notwithstanding the verdict on Reyes-Gonzalez's negligence cause of action, arguing primarily Reyes-Gonzalez failed to prove Color Marble breached the applicable standard of care.  The trial court granted the motion and entered judgment in favor of Color Marble.  (We address Reyes-Gonzalez's challenges to the judgment in the companion appeal, *Reyes-Gonzalez v. Color Marble Inc.*, B343807.)

---

[2]	Neither the record in this appeal nor the record in the companion appeal from the judgment (*Reyes-Gonzalez v. Color Marble Inc.*, B343807) includes any minute orders documenting the trial or a reporter's transcript of the proceedings.

C.    *The Trial Court Awards Color Marble $229,559.35 in Costs*

Color Marble filed a memorandum of costs seeking $232,036.50. Reyes-Gonzalez filed a motion to tax Color Marble's costs, arguing that, because Color Marble's offer to compromise under section 998 was not in good faith, Color Marble was not entitled to recover its expert fees. Reyes-Gonzalez also argued that, even if Color Marble was entitled to recover expert witness fees under section 998, the amount of expert witness fees Color Marble claimed was neither reasonable nor necessary to the litigation. Reyes-Gonzalez also claimed that Color Marble's memorandum of costs contained several mathematical errors and that most of the items Color Marble requested were not allowable or not reasonable and necessary to the litigation. Color Marble opposed Reyes-Gonzalez's motion to tax costs and submitted evidence (a declaration by its counsel and lots of invoices) to support its request for costs. Color Marble also conceded its memorandum of costs contained several errors, and it reduced its total costs claim to $202,881.30. In reply Reyes-Gonzalez argued that, even with this concession, Color Marble's request for costs still contained numerous errors and inconsistencies and sought to recover costs not authorized under sections 998 or 1033.5.

The trial court granted Reyes-Gonzalez's motion to tax in part, taxing jury fees by $280.45 and deposition costs by $2,187.70. The court denied the motion in all other respects and awarded Color Marble $229,559.35 in costs. Reyes-Gonzalez

5

timely appealed from the order denying in part his motion to tax Color Marble's costs.[3]

## DISCUSSION

Reyes-Gonzalez challenges the trial court's cost award on numerous grounds. We begin with the largest component of the cost award—expert witness fees awarded under section 998—and then address Reyes-Gonzalez's arguments regarding the various other categories of costs under section 1033.5.

A.    *The Court Did Not Abuse Its Discretion in Awarding Expert Witness Fees Under Section 998, but the Court Erred in Awarding Fees for Services Provided Prior to Color Marble's Offer To Compromise*

Reyes-Gonzalez argues the trial court erred in awarding Color Marble $90,705 in expert witness fees. Reyes-Gonzalez contends that, because the trial court did not appoint an expert witness and Color Marble did not make a reasonable and good faith offer to compromise, Color Marble was not entitled to recover those costs under section 998. Reyes-Gonzalez also argues that, even if the court properly awarded some expert witness fees under section 998, the court erred in awarding fees for work performed before Color Marble served its offer to compromise and that, in any event, the amount of fees awarded was excessive.

---

[3]    A postjudgment order denying a motion to tax costs is appealable. (*LNSU #1, LLC v. Alta Del Mar Coastal Collection Community Assn.* (2023) 94 Cal.App.5th 1050, 1081.)

1. *The Trial Court Did Not Abuse Its Discretion in Ruling Color Marble Made a Reasonable and Good Faith Offer To Compromise*

Section 998 allows any party in a civil action to serve a settlement offer to any other party before trial. (§ 998, subd. (b).) Section 998, subdivision (c)(1), further provides: "If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover their postoffer costs and shall pay the defendant's costs from the time of the offer. In addition, . . . the court . . . , in its discretion, may require the plaintiff to pay a reasonable sum to cover postoffer costs of the services of expert witnesses . . . actually incurred and reasonably necessary in . . . preparation for trial or arbitration . . . of the case by the defendant.'" (See *Adams v. Ford Motor Co.* (2011) 199 Cal.App.4th 1475, 1482-1483 (*Adams*).)

The "purpose of section 998 is to encourage the settlement of litigation without trial," and to effectuate that purpose courts have read a "good faith requirement" into the statute. (*Adams, supra*, 199 Cal.App.4th at p. 1483.) Thus, "[o]nly settlement offers made in good faith are effective under section 998." (*Covert v. FCA USA, LLC* (2022) 73 Cal.App.5th 821, 833 (*Covert*).) Good faith "requires that the settlement offer be 'realistically reasonable under the circumstances of the particular case.' [Citation.] The offer must therefore 'carry with it some reasonable prospect of acceptance.'" (*Adams*, at p. 1483.)

"'Whether a section 998 offer has a reasonable prospect of acceptance is a function of two considerations, both to be evaluated in light of the circumstances "'at the time of the offer'" and "'not by virtue of hindsight.'" [Citations.] First, was the [section] 998 offer within the "range of reasonably possible

7

results" at trial, considering all of the information the offeror knew or reasonably should have known? [Citation.] Second, did the offeror know that the offeree had sufficient information, based on what the offeree knew or reasonably should have known, to assess whether the "offer [was] a reasonable one," such that the offeree had a "fair opportunity to intelligently evaluate the offer"?'" (*Covert, supra,* 73 Cal.App.5th at p. 834.)

"'Although the party making a 998 offer generally has the burden of showing that [the] offer is valid [citations], it is the 998 offeree who bears the burden of showing that an otherwise valid 998 offer was not made in good faith.'" (*Covert, supra,* 73 Cal.App.5th at p. 834.) "'"'Where . . . the offeror obtains a judgment more favorable than its offer, the judgment constitutes prima facie evidence showing the offer was reasonable and the offeror is eligible for costs as specified in section 998.'"'" (*Id.* at pp. 833-834; see *Adams, supra,* 199 Cal.App.4th at p. 1484.) "'"'Whether a section 998 offer was reasonable and made in good faith is a matter left to the sound discretion of the trial court, and will not be reversed on appeal except for a clear abuse of discretion.'"'" (*Covert,* at p. 834; see *Adams,* at p. 1484 ["An appellate court may reverse the trial court's determination only if the court finds that in light of all the evidence viewed most favorably in support of the trial court, no judge could have reasonably reached a similar result."].)

The trial court did not abuse its discretion in ruling Color Marble's offer to compromise was reasonable and in good faith. The judgment Color Marble obtained—no liability and the right to recover hundreds of thousands of dollars in costs as a prevailing party—was more favorable than its offer to compromise—no liability (a dismissal of the complaint with

prejudice) and a waiver of its right to recover its costs. That is prima facie evidence the offer was reasonable. (See *Bates v. Presbyterian Intercommunity Hospital, Inc.* (2012) 204 Cal.App.4th 210, 221 [dismissal resulting in no liability "established the prima facie reasonableness of the section 998 offer"].)

Reyes-Gonzalez did not rebut this evidence. Color Marble served its offer to compromise at the end of April 2024, approximately two months before trial. By that time, the parties had completed most (if not all) of their discovery. The (limited) evidence in the record on appeal supports an inference Reyes-Gonzalez had a good chance of not prevailing against Color Marble at trial. In ruling on Reyes-Gonzalez's motion to tax, the court stated his "case against Color Marble at trial was de minimis, as the Court concluded in granting Color Marble's" motion for judgment notwithstanding the verdict. Color Marble and Reyes-Gonzalez were likely aware, at the time Color Marble made its offer to compromise, of evidentiary gaps in Reyes-Gonzalez's case that made judgment for Color Marble a distinct possibility. Considered in that light, a waiver of costs in exchange for a dismissal with prejudice was reasonable and in good faith.

Reyes-Gonzalez does not cite or provide any evidence to the contrary. Reyes-Gonzalez did not include a transcript of the trial in the record of this appeal or the companion appeal from the judgment. And the excerpts of the reporter's transcript he has included do not relate to Reyes-Gonzalez's motion to tax Color Marble's costs; they involve motions by the other two defendants to tax his costs. As the court stated in *Jones v. Dumrichob* (1998) 63 Cal.App.4th 1258, in words equally

9

applicable to this appeal:  "Considering that the determination of the good faith and reasonableness of a section 998 compromise offer is left to the sound discretion of the trial court [citation], appellants' failure to designate the reporter's transcript of the trial as part of the record on appeal leaves this court with no evidence upon which to base a finding that the trial court abused its discretion in determining that respondent's . . . offer was reasonable.  Given this omission, and unlike the trial judge, we are unable to evaluate independently the strength of appellants' case on the merits.  Therefore, on this record, it would be speculative to make that assessment ourselves, or to reject the trial court's judgment."  (*Id.* at p. 1264.)

Reyes-Gonzalez argues that, because Color Marble did not offer him any money to settle the case, the offer was a "token" or "bad faith" offer.  Citing *Wear v. Calderon* (1981) 121 Cal.App.3d 818, Reyes-Gonzalez argues "a token or nominal offer will not satisfy the good faith requirement . . . [¶] . . . unless it is absolutely clear that no reasonable possibility exists that the defendant will be held liable."  (*Id.* at p. 821.)  True, Color Marble did not offer to pay Reyes-Gonzalez to settle his case; Color Marble offered only to waive its right to seek fees and costs, in exchange for a dismissal of the action with prejudice.  But Color Marble's proposal was valuable:  It would have relieved Reyes-Gonzalez of having to pay Color Marble a substantial amount in costs.  (See *Adams, supra*, 199 Cal.App.4th at p. 1485 ["a section 998 offer has value beyond the monetary award provided if it also includes a waiver of costs"]; *Jones v. Dumrichob, supra,* 63 Cal.App.4th at p. 1264 [section 998 offer that included a waiver of costs, but no monetary payment, was reasonable because it "carried a significant value to" the

appellants: "if accepted, it would have eliminated appellants' exposure to the very costs which are the subject of this appeal"].)

Reyes-Gonzalez also argues that, because several juries in Southern California have rendered multi-million dollar verdicts in favor of plaintiffs in similar cases, and because in his view a reasonable jury could have awarded him more than $1 million against Color Marble, Color Marble did not make its offer to compromise in good faith. However, "[w]hether an offer to compromise is made in good faith . . . cannot be measured by the amount of claimed damages or a party's subjective belief in the case's value. An offer to compromise may be 'realistically reasonable' and justify cost shifting even though the party receiving the offer is unlikely to accept it as a consequence of the party's skewed valuation of the case." (*Essex Ins. Co. v. Heck* (2010) 186 Cal.App.4th 1513, 1530.) That is the case here.

2. *The Trial Court Erred in Awarding Expert Witness Fees for Services Predating Color Marble's Offer To Compromise*

Reyes-Gonzalez argues that, even if the trial court did not err in awarding expert witness fees under section 998, the court abused its discretion in awarding fees for services the expert witnesses provided before Color Marble served its statutory offer to compromise. He is correct.

As discussed, section 998, subdivision (c)(1), authorizes the trial court to award "postoffer costs of the services of expert witnesses . . . ." (See *Toste v. CalPortland Construction* (2016) 245 Cal.App.4th 362, 375-376 [2016 amendment to section 998, subdivision (c)(1), clarified "'that this provision requires a plaintiff to cover only expert witness costs that arose postoffer'"].)

11

Color Marble sought $90,705 in expert witness fees and asserted it incurred all of those fees after it made its offer to compromise. The evidence did not support that assertion. Color Marble submitted invoices from its expert witness, Brian Daly. Regarding the May 31, 2024 invoice, counsel for Color Marble stated the total incurred, after subtracting fees for work performed before the offer to compromise, was $17,325. That was incorrect. The invoice included three entries for work performed before April 23, 2024—April 1, 2024 ($687.50); April 17, 2024 ($275.00); and April 22, 2024 ($495.00)—and Color Marble did not subtract those amounts from its request. Because Color Marble was not entitled to recover expert witness fees incurred before it made its offer to compromise, the court abused its discretion in failing to tax $1,457.50 in this category.

> 3. *The Trial Court Did Not Abuse Its Discretion in Ruling Color Marble's Remaining Expert Witness Fees Were Reasonably Necessary*

Costs recoverable under section 998 must be "actually incurred and reasonably necessary" to preparing the case for trial. (§ 998, subd. (c)(1).) "[T]he decision to award expert witness fees, and the determination of whether these fees were reasonably necessary, are issues left to the discretion of the trial court." (*Adams, supra,* 199 Cal.App.4th at p. 1484; accord, *LAOSD Asbestos Cases* (2018) 25 Cal.App.5th 1116, 1126.)

Reyes-Gonzalez contends the trial court erred in awarding $10,000 in expert witness fees for experts jointly retained by Color Marble and the other defendants. Reyes-Gonzalez argues Color Marble "failed, over Reyes-Gonzalez's objection, to provide basic documentation establishing that it incurred such costs for

12

services provided after its section 998 offer." That is not true. Counsel for Color Marble explained in her declaration Color Marble "participated in the joint retention of the following defense experts: (1) Dr. Victor Roggli (pathologist); (2) Dr. Christian Merlo (pulmonologist); (3) Rhonda Renteria (life care planner); and (4) Kenny McNulty (economist). Color Marble's portion of expert fees for the aforementioned experts was $10,000. These costs were incurred after Color Marble served its 998 offer to compromise to plaintiff." Color Marble included the four experts in its expert witness designation. Nothing more was required. (See, e.g., *Jones v. Dumrichob*, *supra*, 63 Cal.App.4th at p. 1265, fn. omitted [there is "nothing in the case law, the statute, or [rule 3.1700] of the California Rules of Court regarding prejudgment costs which prohibits reliance on the declaration of counsel as documentation of the items claimed"].)

Reyes-Gonzalez also argues Color Marble "sought recovery of a share of fees for Daly's work on behalf of" another defendant, Paragon Industries, Inc. (Reyes-Gonzalez asserts, without evidence, counsel for Color Marble also represented Paragon.) Reyes-Gonzalez complains that, though one of Daly's bills "contained deductions for work for defendants represented by other law firms, it did not separate out the work performed for Color Marble's counsel's other client—Paragon Industries" and that Daly's other invoices to counsel for Color Marble "did not specify work for any individual clients, thus failing to show what, if any, fees he incurred for Color Marble's specific benefit." It is true Daly's invoices do not mention Paragon or indicate whether the work he performed was for Paragon, Color Marble, or both. Daly's invoices are addressed simply to counsel for Color Marble.

13

But counsel for Color Marble explained in her declaration the amounts reflected on Daly's invoices were incurred by Color Marble alone ("this work was performed solely for Color Marble"), and Reyes-Gonzalez offered only speculation (rather than evidence) to the contrary.

Finally, Reyes-Gonzalez argues the number of hours Daly spent working for Color Marble was "excessive," i.e., not reasonable and necessary to prepare the case for trial. "The trial court, having heard the entire case and observed the expert witnesses' testimony, is in a far better position than an appellate court to exercise [its] discretion and determine what fees were reasonably necessary. [Citation.] Thus, an appellate court ordinarily should reverse the trial court's determination only if it finds 'in light of all the evidence viewed most favorably in support of the trial court, no judge could have reasonably reached a similar result.'" (*LAOSD Asbestos Cases*, *supra*, 25 Cal.App.5th at p. 1126.) As discussed, Reyes-Gonzalez did not include a transcript of the trial in the record of this appeal or the appeal from the judgment. Therefore, we cannot evaluate, and we defer to, the trial court's implicit finding the expert's fees were reasonable and necessary.

> B. *The Trial Court Abused Its Discretion in Awarding Certain Other Costs Requested by Color Marble*

> 1. *Applicable Law and Standard of Review*

A prevailing party is entitled to recover costs. (§ 1032, subd. (b).) Section 1033.5, subdivision (a), lists the costs a prevailing party may recover, and section 1033.5, subdivision (b), lists costs it may not recover. Costs neither permitted nor

14

prohibited under section 1033.5, subdivisions (a) and (b), "may be allowed or denied in the court's discretion." (§ 1033.5, subd. (c)(4).) Section 1033.5 further provides allowable costs must be "reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation" and "reasonable in amount." (§ 1033.5, subd. (c)(2), (3).) "Costs are allowable if incurred, whether or not paid." (§ 1033.5, subd. (c)(1).)

"'In ruling upon a motion to tax costs, the trial court's first determination is whether the statute expressly allows the particular item and whether it appears proper on its face. "If so, the burden is on the objecting party to show [the costs] to be unnecessary or unreasonable." [Citation.] Where costs are not expressly allowed by the statute, the burden is on the party claiming the costs to show that the charges were reasonable and necessary.'" (*Rozanova v. Uribe* (2021) 68 Cal.App.5th 392, 399; see *Berkeley Cement, Inc. v. Regents of University of California* (2019) 30 Cal.App.5th 1133, 1139.) "We 'review a trial court's determination on which costs are reasonably necessary and reasonable in amount under the abuse of discretion standard.'" (*Rojas v. HSBC Card Services Inc.* (2023) 93 Cal.App.5th 860, 892; see *Rozanova*, at p. 399.)

### 2. *Jury Fees*

Color Marble sought $1,766.49 in jury fees, which are recoverable under section 1033.5, subdivision (a)(1). In its opposition to Reyes-Gonzalez's motion to tax costs, however, Color Marble conceded it could only support a request for jury fees of $1,477.04—a difference of $289.45. The trial court, however, taxed Color Marble's request for jury fees by

15

only $280.45.  The trial court should have taxed jury fees by $289.45, not $280.45—a difference of $9.00.

### 3. *Deposition Costs*

Color Marble initially requested $28,580.55 in deposition costs, which are allowable under section 1033.5, subdivision (a)(3).  In its opposition to Reyes-Gonzalez's motion to tax costs, however, Color Marble conceded that it made a mathematical error in its cost memorandum and that it actually incurred deposition costs of only $26,392.85—a difference of $2,187.70.  The trial court properly taxed Color Marble's deposition costs by $2,187.70.

Reyes-Gonzalez argues that, regarding several witnesses, the trial court abused its discretion in awarding "the full amount of invoices even though [Color Marble's] attorney only paid a portion of them."  He's right.  In three instances identified by Reyes-Gonzalez, Color Marble requested (and the court awarded) more than Color Marble paid.  For example, counsel for Color Marble received an invoice from a court reporting service for $774.75 for the deposition of D. Reyes-Gonzalez.  In its memorandum of costs, Color Marble requested $774.75.  But in addition to submitting a copy of the invoice to the court, Color Marble also submitted a copy of the check its counsel sent to the court reporting service.  Counsel paid only $387.38.  The memo line on the check explained the difference:  It says this amount was the "share cost paid" by Color Marble.  Color Marble made the same error regarding two other depositions.  Color Marble requested $523.11 for the deposition of C. Gonzalez Barajas, but according to Color Marble's evidence, it paid only $261.56 as its "share [of the] cost."  Similarly, Color Marble

16

requested $2,187.73 for the deposition of J. Reyes-Gonzalez, but the evidence showed Color Marble's counsel paid only $1,516.05 as the "share cost." In light of these discrepancies, the trial court abused its discretion in failing to tax deposition costs by an additional $1,320.60, for a total reduction of $3,508.30.

4. *Court Reporter Fees*

Color Marble requested and the court awarded $53,427.91 for court reporter fees under section 1033.5, subdivision (a)(11). Reyes-Gonzalez argues Color Marble incurred only $15,200.94 for court reporter fees. Reyes-Gonzalez is correct.

In his motion to tax Reyes-Gonzalez sought to tax all of the costs Color Marble requested in this category. Reyes-Gonzalez argued that some of the costs claimed by Color Marble seemed to be related to "realtime transcripts" the court had not ordered and that Color Marble's total court reporter costs were substantially higher than Reyes-Gonzalez's court reporter costs—a discrepancy the limited information in Color Marble's memorandum of costs could not explain. This shifted the burden to Color Marble to justify the request.

In opposition, counsel for Color Marble stated in her declaration that Color Marble paid a court reporter service $224.95 to transcribe a hearing and that, "between June 24, 2025, and August 7, 2025, Color Marble incurred $53,202.96 in court reporting fees pertaining to trial in this matter." Counsel attached "copies of the court reporting invoices" to her declaration, but did not provide any analysis of the various types of charges on the invoices.

Color Marble did not meet its burden to show it was entitled to $53,221.88 in court reporter fees. Reyes-Gonzalez

17

showed that most of the charges listed on the invoices related to nonrecoverable items, such as transcripts not ordered by the court, rough transcripts, rush charges, "realtime" transcripts not ordered by the court, "AI summaries," electronic language interpretation, and equipment rentals.  Counsel for Reyes-Gonzalez provided the trial court with a chart that categorized every line item on every invoice submitted by Color Marble.  According to counsel for Reyes-Gonzalez, Color Marble's recoverable court reporter fees and costs totaled only $15,200.94.  Color Marble does not dispute Reyes-Gonzalez's analysis.[4]

Reyes-Gonzalez also argues Color Marble did not actually "incur" the expenses for court reporting services.  Reyes-Gonzalez observes that the court reporting company sent its bills to Travelers Insurance Company, which Reyes-Gonzalez asserts "was the insurer for [counsel for Color Marble's] other client, defendant Paragon Industries.  Color Marble thus provided no actual evidence as to what it incurred in court reporter fees at trial."  But Color Marble did provide evidence it incurred the expenses, through its attorney's declaration.  And Reyes-Gonzalez cites no evidence to support his contention

---

[4]     Color Marble argues the trial court did not abuse its discretion in awarding these costs under section 1033.5, subdivision (c)(4), which as stated gives the court discretion to award costs that are neither permitted nor prohibited by statute.  Color Marble, however, did not make that argument in the trial court,[*] thus forfeiting it.  (See *Swain v. LaserAway Medical Group, Inc.* (2020) 57 Cal.App.5th 59, 70.)

> [*]  Color Marble argued these costs were awardable under section 1033.5, subdivision (a)(11), as court reporter fees.

18

Travelers insured another defendant in the case. And even if Travelers insured Paragon, and Paragon was a defendant in the case at some point, Paragon was not a defendant at trial. Therefore, the evidence did not support a reasonable inference Color Marble did not incur the court reporter expenses it properly requested. Which means the trial court erred by not taxing costs in this category by $38,226.97.

### 5. *Models, Enlargements, Photocopies of Exhibits, and Electronic Presentation of Evidence*

Color Marble initially requested (and the court awarded) $48,031.64 in costs under section 1033.5, subdivision (a)(13), for exhibits, enlargements, and the like. In opposition to the motion to tax costs, however, Color Marble conceded that its initial request was incorrect and that it only incurred $21,353.54 in costs in this category—a difference of $26,678.10. Reyes-Gonzalez correctly argues the court abused its discretion by failing to tax costs by $26,678.10.

Regarding the other costs awarded in this category, Reyes-Gonzalez argues the trial court erred in awarding Color Marble $20,644.14 for "technical support, rental equipment, an off-site 'war room' and travel expenses" because, according to Reyes-Gonzalez, those expenses are not "statutorily recoverable." Reyes-Gonzalez is wrong on the law and the facts. The trial court may award costs under section 1033.5, subdivision (a)(13), for "[m]odels, the enlargements of exhibits and photocopies of exhibits, and the electronic presentation of exhibits, including costs of rental equipment and electronic formatting . . . , if they were reasonably helpful to aid the trier of fact." In support of Color Marble's request for costs, counsel for

19

Color Marble explained the expenses in this category related to "electronic presentation of exhibits and publishing opening and closing PowerPoint slides." Because the invoices submitted by Color Marble supported its description of these expenses, the court did not abuse its discretion in awarding these costs. (See *Green v. County of Riverside* (2015) 238 Cal.App.4th 1363, 1373, 1374 [affirming an award of $40,000 in costs for "preparation and presentation of electronic evidence, including videos of deposition testimony, exhibits and excerpts from audio recordings, at trial," and stating the "[u]se of such technology, including a technician to monitor the equipment and quickly resolve any glitches, has become commonplace, if not expected by jurors"]; *Bender v. County of Los Angeles* (2013) 217 Cal.App.4th 968, 991 [affirming an award of $24,000 in costs relating to a party's use of video technology in the courtroom].)

6.     *Fees for Electronic Filing or Service*

Color Marble sought and the trial court awarded $8,657.20 for fees for electronic filing or service under section 1033.5, subdivision (a)(14). Reyes-Gonzalez argues the court abused its discretion in denying his motion to tax two items in Color Marble's memorandum of costs. He is correct.

The first item Reyes-Gonzalez sought to tax was listed on the memorandum of costs as "Exhibits to Proposed Special Jury Instructions CCR Title 8 & Hazard Communication OSHA - $6,550.60." On its face, $6,550.60 is a patently unreasonable fee for electronic filing or service of ordinary litigation documents. Indeed, Color Marble did not incur that amount to file or serve

20

those documents.  The supporting invoice showed Color Marble only paid $134.60—a difference of $6,416.[5]

The second item Reyes-Gonzalez sought to tax was "Amended Proposed Special Jury Instructions (file and serve courtesy copies) - $1,110.20."  Again, the amount claimed by Color Marble is (absent any exceptional circumstances) unreasonable on its face, and the supporting invoice again did not support Color Marble's request.  Color Marble incurred $107.25, not $1,110.20—a difference of $1,002.95.[6]

Therefore, the court abused its discretion by not taxing costs in this category by $7,418.95.

### 7.    *Other Costs*

Finally, Reyes-Gonzalez argues the court should not have awarded $440 in costs Color Marble incurred "for the removal of defense trial binders from the Court Room."  Though Color Marble initially categorized this item as an "attachment expense," Color Marble acknowledged in its opposition to Reyes-Gonzalez's motion to tax it should have listed the expense in the miscellaneous "other" category on the memorandum of costs form.

Reyes-Gonzalez has not demonstrated the trial court abused its discretion.  After explaining the factual background, he simply asserts (without analysis or citation to legal authority),

---

[5]    The invoice lists a "Total" due of $6,550.60, which appears to be the cumulative amount owed to the company by counsel's firm.

[6]    As with the other invoice, the "Total" of $1,110.20 appears to be a cumulative amount owed by counsel's firm.

"Regardless of how it was categorized, however, Color Marble never showed that paying $440 to have binders picked up from the courtroom was necessary, reasonable, or statutorily authorized." Reyes-Gonzalez needed to do more than that to show the trial court abused its discretion. (See *Coziahr v. Otay Water Dist.* (2024) 103 Cal.App.5th 785, 799 ["Points must be supported by reasoned argument, authority, and record citations, or may be deemed forfeited."]; *Lee v. Kim* (2019) 41 Cal.App.5th 705, 721 [appellant's "burden on appeal 'includes the obligation to present *argument and legal authority* on *each point* raised'"]; *AmeriGas Propane, L.P. v. Landstar Ranger, Inc.* (2010) 184 Cal.App.4th 981, 1001, fn. 4 [appellant forfeits an argument by failing to support it with "reasoned argument and citations to authority"].)

## DISPOSITION

The order awarding costs is modified to tax costs in the following categories: $1,457.50 in expert witness fees; $289.45 in jury fees; $3,508.30 in deposition costs; $38,226.97 in court reporter fees; $26,678.10 for models, exhibits, and photocopies; and $7,418.95 for electronic filing and service.  As modified, the order is affirmed.  The court is directed to enter an amended judgment reflecting a total cost award of $154,457.23 to Color Marble.  Reyes-Gonzalez is to recover his costs on appeal.

SEGAL, J.

We concur:

MARTINEZ, P. J.

FEUER, J.